OPINION
{¶ 1} John Spangler, Gabriele Spangler, and Joseph Spangler appeal from the judgment entry of the Geauga County Court of Common Pleas, Probate Division, denying their motions to dismiss the Geauga County Board of Mental Retardation and Developmental Disabilities ("GCBMRDD") from this case, denying Joseph's continuance *Page 2 
as sole guardian for John, and continuing, indefinitely, Advocacy and Protection Services, Inc. ("APSI") as John's guardian. We reverse and remand.
 {¶ 2} John Spangler (d/o/b November 12, 1987) suffers from autism, mitochondrial disease, and mild mental retardation. Evidence presented in a lengthy hearing before the trial court, commencing April 24, 2007, and continuing June 13, 2007 and July 24, 2007 indicates that John, as he has grown older, has had a problem controlling his temper, and has periodic bouts of violent and destructive behavior. There have been conflicts between his parents — Gabriele and Joseph — and various service providers about appropriate care for John, his parents expressing dissatisfaction with the service providers, and the service providers concerned that his parents demands for new placements, etc., interfere with the structured regimen most conducive to John's wellbeing.
 {¶ 3} John lived with his parents until reaching majority. Due largely to his fits of violent behavior, he was eventually placed outside the home. By a judgment entry filed June 15, 2006, his mother was appointed emergency guardian of his person. This emergency guardianship was extended by a judgment entry filed June 19, 2006. Permanent guardianship of his person was granted to both Mr. and Mrs. Spangler by a judgment entry filed July 18, 2006.
 {¶ 4} October 25, 2006, GCBMRDD filed an ex parte motion to remove Mr. and Mrs. Spangler as John's guardians for alleged breach of duty. Specifically, GCBMRDD was concerned about Gabriele's expressed intention to remove John from the home of his then-caregivers, Mr. and Mrs. Devlin. The trial court granted the motion that same *Page 3 
day, and appointed APSI as John's temporary guardian. Hearing was set for October 31, 2006.
 {¶ 5} October 31, 2006, the trial court memorialized an agreement reached between the parties in a judgment entry. Mr. and Mrs. Spangler agreed to APSI continuing as temporary guardian of John's person, and agreed to submit psychiatric and drug and alcohol assessments of themselves to the trial court prior to the next pretrial. This was scheduled for April 24, 2007.
 {¶ 6} January 24, 2007, Mr. and Mrs. Spangler moved the trial court to remove APSI as John's temporary guardian, for allegedly breaching its fiduciary duty to provide him a safe environment, and to have Mr. Spangler appointed guardian. January 25, 2007, the trial court ordered the Spanglers to supplement this motion. That same day, APSI moved the trial court to dismiss the Spangler's motion, join GCBMRDD as a party, and appoint a guardian ad litem. The Spanglers opposed this motion February 2, 2007.
 {¶ 7} February 7, 2007, the trial court filed a judgment entry converting the scheduled April 24, 2007 pretrial into a full hearing on whether to continue APSI as John's guardian, or to appoint the Spanglers. April 19, 2007, the Spanglers and APSI jointly moved the trial court to reconvert the April 24 hearing into a pretrial.
 {¶ 8} April 20, 2007, the Spanglers moved the court to dismiss the GCBMRDD motion which had originally removed them as John's guardians for lack of standing to file such motion. The Spanglers contended it was outside the statutorily defined powers of a county board of mental retardation to attempt to seek the removal of an incompetent's guardian. GCBMRDD opposed April 23, 2007. *Page 4 
 {¶ 9} As noted above, hearing commenced April 24, 2007, and continued June 13, 2007, and July 24, 2007.
 {¶ 10} April 25, 2007, the trial court joined GCBMRDD as a party for purposes of prosecuting its motion to remove the Spanglers as John's guardians.
 {¶ 11} June 4, 2007, counsel for John appeared in the case. Discovery ensued; and, June 13, 2007, John filed to dismiss GCBMRDD from the case, for lack of standing.
 {¶ 12} August 15, 2007, the trial court filed its judgment entry. Finding the conduct of John's parents in constantly seeking new or different services for him hindered, rather than helped, his care, the trial court granted GCBMRDD's motion to remove the Spanglers as John's guardians, and denied their motion to remove APSI. APSI was continued indefinitely as guardian of John's person.
 {¶ 13} September 13, 2007, the Spanglers noticed appeal. It was given case number 2007-G-2800. September 24, John noticed appeal. It was given case number 2007-G-2802. October 18, 2007, the Spanglers filed an amended notice of appeal, adding APSI as a party thereto.
 {¶ 14} October 29, 2007, this court dismissed John's appeal, sua sponte, as untimely filed pursuant to App. R. 4(A). November 8, 2007, John moved to reinstate his appeal as timely pursuant to App. R. 4(B)(1). That same day, John moved to consolidate his appeal with that of his parents. We granted each motion by a judgment entry filed November 26, 2007.
 {¶ 15} April 16, 2008, the Ohio Association of County Boards of Mental Retardation and Developmental Disabilities ("OACBMRDD") moved for leave to file an *Page 5 
amicus curiae brief, instanter. By a judgment entry filed May 14, 2008, we granted leave; and ordered the Spanglers and John to file their replies within ten days. May 20, 2008, the OACBMRDD filed for leave to participate in oral argument, which leave we granted by a judgment entry filed July 7, 2008.
 {¶ 16} John notices a single assignment of error on appeal:
 {¶ 17} "The Probate Court improperly denied Appellant John Spangler's Motion to Dismiss Appellee [GCBMRDD] because [GCBMRDD] lacked standing under the Ohio Revised Code to see the removal of Appellant's Guardians."
 {¶ 18} Mr. and Mrs. Spangler assign four errors on appeal:
 {¶ 19} "[1.] Whether the trial court erred in permitting [GCBMRDD] to file a motion for removal of the guardians as it was not a party in the case, did not have statutory authority to do so, and such a motion was beyond the statutory authority of the Court.
 {¶ 20} "[2.] Whether the trial court erred in granting the emergency motion to remove the guardian as there was no basis presented for the filing of such a motion.
 {¶ 21} "[3.] Whether the trial court's ruling was against the manifest weight of the evidence as there was no evidence that the original guardians had failed to provide services for the ward.
 {¶ 22} "[4.] Whether the Probate Court erred by denying counsel the right to listen to the prior testimony tape upon written request."
 {¶ 23} We consider John's assignment of error, and his parent's first assignment of error, together. Essentially, each challenges whether a county board of mental retardation has the power to move a probate court to remove a guardian for an incompetent person. We find they do not. *Page 6 
 {¶ 24} County boards of mental retardation are creatures of statute, created to supervise services for the mentally and developmentally challenged. Regarding such bodies, the Supreme Court of Ohio has held:
 {¶ 25} "It is well settled that an administrative agency has only such regulatory power as is delegated to it by the General Assembly. Authority that is conferred by the General Assembly cannot be extended by the administrative agency. Burger Brewing Co. v. Thomas (1975),42 Ohio St.2d 377, 379, * * *.
 {¶ 26} "`Such grant of power, by virtue of a statute, may be either express or implied, but the limitation put upon the implied power is that it is only such as may be reasonably necessary to make the express power effective. In short, the implied power is only incidental or ancillary to an express power, and, if there be no express grant, if follows, as a matter of course, that there can be no implied grant.
 {¶ 27} "`In construing such grant of power, particularly administrative power through and by a legislative body, the rules are well settled that the intention of the grant of power, as well as the extent of the grant, must be clear; that in case of doubt that doubt is to be resolved not in favor of the grant but against it.' State ex rel.A. Bentley Sons Co. v. Pierce (1917), 96 Ohio St. 44, 47, * * *."D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health, 96 Ohio St.3d 250,2002-Ohio-4172, at ¶ 38-40.
 {¶ 28} Consequently, to discover whether a county board of mental health, such as GCBMRDD, may move a probate court to remove the guardian of an incompetent's person, we must look to the powers and duties conferred upon such boards, to see whether by express or implied grant, such power exists. *Page 7 
 {¶ 29} The powers and duties imposed upon county boards of mental retardation are set forth at R.C. 5126.05(A), which provides:
 {¶ 30} "(A) Subject to the rules established by the director of mental retardation and developmental disabilities pursuant to Chapter 119. of the Revised Code for programs and services offered pursuant to this chapter, and subject to the rules established by the state board of education pursuant to Chapter 119. of the Revised Code for programs and services offered pursuant to Chapter 3323. of the Revised Code, the county board of mental retardation and developmental disabilities shall:
 {¶ 31} "(1) Administer and operate facilities, programs, and services as provided by this chapter and Chapter 3323. of the Revised Code and establish policies for their administration and operation;
 {¶ 32} "(2) Coordinate, monitor, and evaluate existing services and facilities available to individuals with mental retardation and developmental disabilities;
 {¶ 33} "(3) Provide early childhood services, supportive home services, and adult services, according to the plan and priorities developed under section 5126.04 of the Revised Code;
 {¶ 34} "(4) Provide or contract for special education services pursuant to Chapters 3317. and 3323. of the Revised Code and ensure that related services, as defined in section 3323.01 of the Revised Code, are available according to the plan and priorities developed under section 5126.04 of the Revised Code;
 {¶ 35} "(5) Adopt a budget, authorize expenditures for the purposes specified in this chapter and do so in accordance with section 319.16 of the Revised Code, approve attendance of board members and employees at professional meetings and approve *Page 8 
expenditures for attendance, and exercise such powers and duties as are prescribed by the director;
 {¶ 36} "(6) Submit annual reports of its work and expenditures, pursuant to sections 3323.09 and 5126.12 of the Revised Code, to the director, the superintendent of public instruction, and the board of county commissioners at the close of the fiscal year and at such other times as may be reasonably requested;
 {¶ 37} "(7) Authorize all positions of employment, establish compensation, including but not limited to salary schedules and fringe benefits for all board employees, approve contracts of employment for management employees that are for a term of more than one year, employ legal counsel under section 309.10 of the Revised Code, and contract for employee benefits;
 {¶ 38} "(8) Provide service and support administration in accordance with section 5126.15 of the Revised Code;
 {¶ 39} "(9) Certify respite care homes pursuant to rules adopted under section 5123.171 (5123.17.1) of the Revised Code by the director of mental retardation and developmental disabilities."
 {¶ 40} Obviously, the power to move the probate court to remove an incompetent's guardian is not expressly granted by R.C. 5126.05. Does any section of R.C. Chapter 5126 imply such a grant? We think not.
 {¶ 41} R.C. 5126.31 empowers the boards to review, investigate, and remediate cases involving the abuse or neglect of mentally retarded or developmentally disabled adults. Significantly, R.C. 5126.33 provides a detailed description of the procedure such boards must follow if it cannot obtain consent for a service plan for a mentally *Page 9 
retarded or developmentally disabled adult, pursuant to R.C. 5126.31(C). In relevant part, R.C. 5126.33 provides:
 {¶ 42} "(A) A county board of mental retardation and developmental disabilities may file a complaint with the probate court of the county in which an adult with mental retardation or a developmental disability resides for an order authorizing the board to arrange services described in division (C) of section 5126.31 of the Revised Code for that adult if the adult is eligible to receive services or support * * * and the board has been unable to secure consent. The complaint shall include:
 {¶ 43} "(1) The name, age, and address of the adult;
 {¶ 44} "(2) Facts describing the nature of the abuse, neglect, or exploitation and supporting the board's belief that services are needed;
 {¶ 45} "(3) The types of services proposed by the board, as set forth in the protective service plan described in division (J) of section 5126.30 of the Revised Code and filed with the complaint;
 {¶ 46} "(4) Facts showing the board's attempts to obtain the consent of the adult or the adult's guardian to the services.
 {¶ 47} "(B) The board shall give the adult notice of the filing of the complaint and in simple and clear language shall inform the adult of the adult's rights in the hearing under division (C) of this section and explain the consequences of a court order. This notice shall be personally served upon all parties, and also shall be given to the adult's legal counsel, if any, and the legal rights service. The notice shall be given at least twenty-four hours prior to the hearing, although the court may waive this requirement upon a showing that there is a substantial risk that the adult will suffer immediate *Page 10 
physical harm in the twenty-four hour period and that the board has made reasonable attempts to give the notice required by this division.
 {¶ 48} "(C) Upon the filing of a complaint for an order under this section, the court shall hold a hearing at least twenty-four hours and no later than seventy-two hours after the notice under division (B) of this section has been given unless the court has waived the notice. All parties shall have the right to be present at the hearing, present evidence, and examine and cross-examine witnesses. The Ohio Rules of Evidence shall apply to a hearing conducted pursuant to this division. The adult shall be represented by counsel unless the court finds that the adult has made a voluntary, informed, and knowing waiver of the right to counsel. * * *
 {¶ 49} "(D)(1) The court shall issue an order authorizing the board to arrange the protective services if it finds, on the basis of clear and convincing evidence, all of the following:
 {¶ 50} "(a) The adult has been abused, neglected, or exploited;
 {¶ 51} "(b) The adult is incapacitated;
 {¶ 52} "(c) There is a substantial risk to the adult of immediate physical harm or death;
 {¶ 53} "(d) The adult is in need of the services;
 {¶ 54} "(e) No person authorized by law or court order to give consent for the adult is available or willing to consent to the services.
 {¶ 55} "* * *."
 {¶ 56} Further, pursuant to division (D) of R.C. 5126.33, the probate court may, in extreme necessity, order a change in the mentally retarded or developmentally disabled *Page 11 
adult's residence; and, pursuant to division (I)(2), it may issue an ex parte order in an emergency.
 {¶ 57} By providing this extremely detailed statutory provision whereby county boards of mental retardation may seek to remedy perceived problems in the treatment of their clients, we believe the General Assembly has effectively banned such boards from seeing the removal of a guardian, such as occurred in this case. There is no way such a power can be implied from this provision: indeed, the fact that a board of mental retardation can seek an order overriding the wishes of a guardian, cf. R.C. 5126.33, indicates that the power to seek a guardian's removal is beyond a board of mental retardation's authority.
 {¶ 58} In this case, the trial court found GCBMRDD to be a fiduciary of John's, pursuant to its extensive authority to provide services under R.C. 5126.15. As such, the trial court further found GCBMRDD to be John's "next best friend" and a "real party in interest" to the proceeding. We are somewhat dubious that GCBMRDD can be described as a fiduciary to its clients. R.C. 2109.01 defines the term "fiduciary" to include: "an agency under contract with the department of mental retardation and developmental disabilities for the provision of protective service * * *, appointed by and accountable to the probate court as guardian or trustee with respect to mentally retarded or developmentally disabled persons." GCBMRDD was not appointed as John's guardian by the trial court; and it is no more accountable to that court than any other state agency regularly appearing in probate proceedings.
 {¶ 59} Consequently, GCBMRDD lacked standing to move the trial court to replace Mr. Spangler as John's guardian. In Ohio Pyro, Inc. v. OhioDept. of *Page 12 Commerce, 115 Ohio St.3d 375, 2007-Ohio-5024, at ¶ 27, the Supreme Court explained the concept of "standing" as follows:
 {¶ 60} "`Standing' is defined at its most basic as `(a) party's right to make a legal claim or seek judicial enforcement of a duty or right.' Black's Law Dictionary (8th Ed. 2004) 1442. Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue. Ohio Contrs. Assn. v.Bicking (1994), 71 Ohio St.3d 318, 320, * * *. `"(T)he question of standing depends upon whether the party has alleged such a `personal stake in the outcome of the controversy,' as to ensure that `the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'"' (Citations omitted.) State ex rel. Dallman v. Franklin Cty. Court ofCommon Pleas (1973), 35 Ohio St.2d 176, 178-179, * * *, quoting SierraClub v. Morton (1972), 405 U.S. 727, 732, * * *." (Parallel citations omitted.)
 {¶ 61} In this case, GCBMRDD has no claim to make; it has no right or duty requiring judicial enforcement. It has no "personal stake" in the controversy, as its duties revolve around providing and funding treatment for developmentally disabled persons such as John. Statutorily, it has the power, in proper case and following proper procedure, to override a guardian's wishes in a particular instance — but not to petition for a guardian's removal.
 {¶ 62} John's first assignment of error, as well as the first assignment of error of his parents, have merit. Our disposition of these assignments further dictates we find merit in Mr. and Mrs. Spangler's second assignment of error; there was no basis for filing, or granting, the ex parte motion to make APSI temporary guardian of John. In *Page 13 
consequence, we deem moot Mr. and Mrs. Spangler's third assignment of error (challenging the manifest weight of the evidence used in removing them as John's guardians indefinitely).
 {¶ 63} By their fourth assignment of error, Mr. and Mrs. Spangler allege error in the trial court refusing their counsel access to the tape recording of the April 24, 2007 hearing, in order to prepare for the June 13, 2007 hearing. The Spanglers allege written request for access to the tape was made to the trial court, but we find neither any request, nor denial, in the record on appeal. Consequently, we decline to consider the assignment. Cf. App. R. 16(A)(7).
 {¶ 64} The judgment of the Geauga County Court of Common Pleas, Probate Division, is reversed, and this matter is remanded for further proceedings consistent with this opinion.
 {¶ 65} It is the further order of this court that appellees are assessed costs herein taxed.
 {¶ 66} The court finds there were reasonable grounds for this appeal.
MARY JANE TRAPP, J., concurs in part and concurs in judgment only in part with Concurring Opinion,
TIMOTHY P. CANNON, J., dissents with Dissenting Opinion.