IN RE GUARDIANSHIP OF SPANGLER.

**[Cite as *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471.]**

*Guardianships — Removal of guardian — County boards of developmental disabilities have no authority to petition probate court for removal of guardian of incompetent adult — Probate court, under its plenary authority as superior guardian, may sua sponte conduct proceedings to remove guardian.*

(No. 2009-0121 — Submitted December 2, 2009 — Decided June 9, 2010.)

APPEAL from the Court of Appeals for Geauga County, Nos. 2007-G-2800 and 2007-G-2802, 2008-Ohio-6978.

_____

SYLLABUS OF THE COURT

County boards of developmental disabilities have not been granted the express or implied authority to file a motion to remove the guardian of an incompetent adult; however, the probate court, with its plenary authority as the superior guardian, may upon notice from a county board of developmental disabilities conduct proceedings to remove a guardian.

_____

LANZINGER, J.

{¶ 1} In this case we are asked to determine whether a county board of developmental disabilities has the statutory authority and standing to file a motion to remove a guardian of an incompetent adult. We hold that county boards of developmental disabilities have not been granted the express or implied authority to file a motion to remove the guardian of an incompetent adult; however, the probate court, with its plenary authority as the superior guardian, may upon notice from a county board of developmental disabilities conduct proceedings to remove

a guardian. We, therefore, affirm in part, vacate in part, and remand for further proceedings.

**Case History**

{¶ 2} Appellee John Spangler is currently 22 years old and suffers from autism, mental retardation, and mitochondrial disease. After John turned 18, his parents, appellees Gabriele and Joseph Spangler, filed an application to be appointed John's permanent guardians. Appellant Geauga County Board of Mental Retardation and Developmental Disabilities[1] (the "board") participated in the hearings on the matter and supported the parents' application. At one of those hearings, the probate court warned the mother:

{¶ 3} "I'm going to give some consideration to appointing a guardian ad litem to go out and do investigation as to whether you're the most suitable guardians or not. It's very important that he has someone who cares a lot about him, and obviously you do.

{¶ 4} "And I haven't heard anything from your husband yet, but apparently from the interactions that others have had, they feel that he is a very caring individual, too.

{¶ 5} "But you do have to be making good decisions. And I will be attempting to judge the decisions that you're making.

{¶ 6} "If you're not making decisions that are in your son's best interests, in terms of placement, I would consider appointing someone other than you and your husband to be your son's guardian."

{¶ 7} Ultimately, on July 18, 2006, as a result of John's mental and physical conditions, the probate court appointed the parents unlimited guardians of John's person.

---

1. During the pendency of this cause, the General Assembly passed 2009 Sub.S.B. No. 79 (effective October 6, 2009), which changed the name of county boards of mental retardation and developmental disabilities to county boards of developmental disabilities.

**{¶ 8}** Three months later, the board filed a motion to remove the parents as John's guardians and to appoint Advocacy and Protective Services, Inc. ("APSI") as successor guardian. The motion alleged that the mother had created conflict with John's providers and threatened to remove him from their care. The motion was supported by a letter from John's current provider, who stated that there was "an immediate danger to the welfare and safety of John." The probate court granted the motion to remove on a temporary basis, appointed APSI as temporary guardian for John, and set the matter for hearing the following week. At that hearing, the board and the parents agreed to a six-month continuance of the hearing and the appointment of APSI as temporary guardian.

**{¶ 9}** In January 2007, however, the parents moved for an emergency order removing APSI and appointing the father as guardian. APSI responded with a motion to dismiss the parents' emergency motion and requested joinder of the board as a necessary party and appointment of a guardian ad litem. The parents opposed the motion to join the board as a party and later filed a motion to dismiss the board's motion for removal of the parents as guardians, arguing that the board had no statutory authority or standing to file such a motion. The probate court denied the parents' motion to remove APSI and set a hearing in April 2007 on whether the parents would be permitted to serve as John's guardians.

**{¶ 10}** Before the April 2007 hearing, the probate court joined the board as a party to the removal proceedings for purposes of prosecuting its motion to remove the parents as guardians and denied the parents' motion to dismiss the board's motion. At a second hearing two months later, John filed his own motion to dismiss the board from the case, arguing that the board lacked statutory standing to be considered a party. Acknowledging the motion, the court stated:

**{¶ 11}** "That issue has previously been addressed.

**{¶ 12}** "It's my view that they are an interested party, that the Agency is required to provide services, they had information, that preserves this ward allowing them to participate as a party for purposes of assisting the Court in making a decision regarding this issue of who is going to be the guardian.

**{¶ 13}** "In fact, I don't know how this would have been brought to the Court if the Agency been notified [sic], so I'm the one that says they are going to be, continue a party at least as long [as] this issue is pending."

**{¶ 14}** After a third hearing and an in camera interview with John, the matter was submitted to the probate court. In its entry, the trial court found that the statutory obligations imposed on the board for John's benefit are fiduciary in nature and the board therefore had standing to file the motion to remove the parents. The probate court then found that despite John's need for structure and consistency in his life, his mother "repeatedly, impulsively sought changes in John's placements and services without giving due consideration to the opinion of professionals working with John and without having first secured alternative more appropriate services." Moreover, John's father "is either unable or unwilling to intercede objectively and assertively in disputes that have arisen between care providers and his wife." Finding that there was good cause and that it was in John's best interest, the probate court removed the parents as John's guardians and ordered that ASPI continue as the legal guardian for his person.

**{¶ 15}** The parents and John separately appealed to the Eleventh District Court of Appeals. In a split decision, the appellate court reversed. The lead opinion concluded that the board had not been granted the statutory authority, express or implied, to file a motion to remove a guardian and thus lacked general standing to petition the court to remove the guardian. The concurrence focused on R.C. Chapters 2109 and 2111 and determined that the board was not the real party in interest and thus lacked standing. The dissent viewed the general duties

of the board as sufficient to establish the board as an "interested party," allowing the board to object to the guardian.

{¶ 16} We accepted the board's discretionary appeal to determine whether a board of mental retardation and developmental disabilities has the authority and standing to request that a probate court remove a guardian of an incompetent adult and whether the probate court has the authority to conduct proceedings to remove a guardian upon the board's request. *In re Guardianship of Spangler*, 121 Ohio St.3d 1498, 2009-Ohio-2511, 907 N.E.2d 323.

## Legal Analysis

### *Powers and Duties of County Boards of Developmental Disabilities*

{¶ 17} "Each county shall have its own county board of developmental disabilities." R.C. 5126.02(A). County boards, being creatures of statute, have no more authority than that specifically conferred upon them or clearly implied by the statute. See *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536; *Burger Brewing Co. v. Thomas* (1975), 42 Ohio St.2d 377, 379, 71 O.O.2d 366, 329 N.E.2d 693. Implied powers are those that are incidental or ancillary to an expressly granted power; the express grant of power must be clear, and any doubt as to the extent of the grant must be resolved against it. *State ex rel. A. Bentley & Sons Co. v. Pierce* (1917), 96 Ohio St. 44, 47, 117 N.E. 6.

{¶ 18} The general powers and duties of county boards of developmental disabilities are set forth in R.C. 5126.05(A), which gives the boards authority to do the following:

{¶ 19} "(1) Administer and operate facilities, programs, and services as provided by this chapter and Chapter 3323. of the Revised Code and establish policies for their administration and operation;

**{¶ 20}** "(2) Coordinate, monitor, and evaluate existing services and facilities available to individuals with mental retardation and developmental disabilities;

**{¶ 21}** "(3) Provide early childhood services, supportive home services, and adult services, according to the plan and priorities developed under section 5126.04 of the Revised Code;

**{¶ 22}** "(4) Provide or contract for special education services pursuant to Chapters 3306., 3317., and 3323. of the Revised Code and ensure that related services, as defined in section 3323.01 of the Revised Code, are available according to the plan and priorities developed under section 5126.04 of the Revised Code;

**{¶ 23}** "(5) Adopt a budget, authorize expenditures for the purposes specified in this chapter and do so in accordance with section 319.16 of the Revised Code, approve attendance of board members and employees at professional meetings and approve expenditures for attendance, and exercise such powers and duties as are prescribed by the director;

**{¶ 24}** "(6) Submit annual reports of its work and expenditures, pursuant to sections 3323.09 and 5126.12 of the Revised Code, to the director, the superintendent of public instruction, and the board of county commissioners at the close of the fiscal year and at such other times as may reasonably be requested;

**{¶ 25}** "(7) Authorize all positions of employment, establish compensation, including but not limited to salary schedules and fringe benefits for all board employees, approve contracts of employment for management employees that are for a term of more than one year, employ legal counsel under section 309.10 of the Revised Code, and contract for employee benefits;

**{¶ 26}** "(8) Provide service and support administration in accordance with section 5126.15 of the Revised Code;

**{¶ 27}** "(9) Certify respite care homes pursuant to rules adopted under section 5123.171 of the Revised Code by the director of developmental disabilities."

**{¶ 28}** Nothing in R.C. 5126.05(A) grants the board either express or implied power to file a motion to remove a guardian. The trial court, however, relied on another statute that it read as imposing fiduciary obligations on the board. R.C. 5126.15(B) provides:

**{¶ 29}** "The individuals employed by or under contract with a board to provide service and support administration shall do all of the following:

**{¶ 30}** "(1) Establish an individual's eligibility for the services of the county board of developmental disabilities;

**{¶ 31}** "(2) Assess individual needs for services;

**{¶ 32}** "(3) Develop individual service plans with the active participation of the individual to be served, other persons selected by the individual, and, when applicable, the provider selected by the individual, and recommend the plans for approval by the department of developmental disabilities when services included in the plans are funded through medicaid;

**{¶ 33}** "(4) Establish budgets for services based on the individual's assessed needs and preferred ways of meeting those needs;

**{¶ 34}** "(5) Assist individuals in making selections from among the providers they have chosen;

**{¶ 35}** "(6) *Ensure that services are effectively coordinated and provided by appropriate providers*;

**{¶ 36}** "(7) *Establish and implement an ongoing system of monitoring the implementation of individual service plans to achieve consistent implementation and the desired outcomes for the individual;*

**{¶ 37}** "(8) Perform quality assurance reviews as a distinct function of service and support administration;

**{¶ 38}** "(9) Incorporate the results of quality assurance reviews and identified trends and patterns of unusual incidents and major unusual incidents into amendments of an individual's service plan for the purpose of improving and enhancing the quality and appropriateness of services rendered to the individual;

**{¶ 39}** "(10) *Ensure that each individual receiving services has a designated person who is responsible on a continuing basis for providing the individual with representation, advocacy, advice, and assistance related to the day-to-day coordination of services in accordance with the individual's service plan. The service and support administrator shall give the individual receiving services an opportunity to designate the person to provide daily representation. If the individual declines to make a designation, the administrator shall make the designation. In either case, the individual receiving services may change at any time the person designated to provide daily representation.*" (Emphasis added.)

**{¶ 40}** As noted above, both R.C. 5126.15(B)(6) and (10) would appear to require that county board of developmental disabilities employees work with appointed guardians to ensure that services are properly coordinated for individuals receiving their services. In addition, employees are required to monitor the implementation of individual service plans. R.C. 5126.15(B)(7). However, ensuring coordination of services and monitoring their implementation do not amount to an express or implied authority to initiate legal proceedings to seek the removal of an appointed guardian, even if that guardian interferes with service providers.

**{¶ 41}** Furthermore, the General Assembly could have specifically included language granting a county board of developmental disabilities the authority to file a motion to remove an uncooperative guardian. County boards of developmental disabilities have been granted authority to initiate legal proceedings for the protection of an adult with mental retardation or a developmental disability in other contexts. For example, a county board of

8

developmental disabilities may file a complaint with the probate court to provide protective services for an abused or neglected incompetent adult when the board cannot secure consent for such services from either the adult or the guardian and there is a substantial risk of immediate physical harm or death. R.C. 5126.33(A) and (D). A county board of developmental disabilities may also apply to the probate court for a temporary restraining order against anyone interfering with an investigation of reported abuse or neglect or with the provision of services designed to prevent or correct abuse or neglect of an adult with mental retardation or a developmental disability. R.C. 5126.32. But neither of these statutes applies because there has been no refusal of services and no allegation of abuse or neglect or of substantial risk of immediate physical harm or death.

{¶ 42} The board argues that no statute or rule limits a county board of developmental disabilities to the procedures in R.C. 5126.33 to protect the health, safety, and welfare of individuals under its care and supervision. Yet the absence of a limitation on the board's authority does not determine the question. Because the board is governed by statute, there must be an express or implied grant of authority allowing county boards of developmental disabilities to file a motion to remove a guardian. The general duty under R.C. 5126.055(A)(4) "to ensure the health, safety, and welfare of individuals receiving services from a county board of developmental disabilities" does not equate to or imply a grant of authority to interfere with the appointment of a guardian by the probate court.

{¶ 43} Similarly, the board's reliance on R.C. 305.14(C) as authority to file such a motion is misplaced. That statute allows the board to hire legal counsel without authorization from the common pleas court; it does not allow the board to initiate any legal action it chooses.

{¶ 44} We therefore hold that a county board of developmental disabilities does not have the statutory authority to file a motion in the probate court to remove a guardian.

*Probate Court Is the Superior Guardian*

**{¶ 45}** Amicus curiae the state of Ohio and the board in its third proposition of law urge that, irrespective of the powers and duties of a county developmental disabilities board, the probate court has plenary authority to act upon the information brought before it and to remove the parents as guardians for their son. We agree.

**{¶ 46}** As we have previously stated, "[i]t is a well-settled principle of law that probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 77, 531 N.E.2d 708." *In re Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, ¶ 11. The general grant of jurisdiction to probate courts regarding guardians is comprehensive. R.C. 2101.24 states:

**{¶ 47}** "(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:

**{¶ 48}** "* * *

**{¶ 49}** "(e) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts.

**{¶ 50}** "* * *

**{¶ 51}** "(C) The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."

**{¶ 52}** In addition, the probate court is the "superior guardian," and other guardians must obey all probate orders: "At all times, the probate court is the superior guardian of wards who are subject to its jurisdiction, and all guardians who are subject to the jurisdiction of the court shall obey all orders of the court that concern their wards or guardianships." R.C. 2111.50(A)(1).

**{¶ 53}** Guardianship proceedings, including the removal of a guardian, are not adversarial but rather are in rem proceedings involving only the probate court and the ward. *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 5. Because the probate court is the superior guardian, the appointed guardian is simply an officer of the court subject to the court's control, direction, and supervision. *In re Guardianship of Daugherty* (Mar. 9, 1984), 7th Dist. Nos. 83-C-24 and 83-C-29, 1984 WL 7676. The guardian, therefore, has no personal interest in his or her appointment or removal. Id.

**{¶ 54}** It is also clear that the probate court has the plenary authority to investigate guardians. We agree with the analysis used in *In re Guardianship of Herr* (Sept. 2, 1998), 5th Dist. No. 98-CA-16-2, 1998 WL 666986. In *Herr*, the attending physician and nursing staff at a nursing home contacted the probate court with concerns that a guardian was unreasonably denying treatment of emergency conditions to her ward due to the cost. After the probate court summoned the guardian for a hearing and removed her, she appealed, arguing that the court did not have authority sua sponte to order her appearance in probate court. The court of appeals held that the nursing home's communication was sufficient cause to allow the probate court to conduct a hearing concerning the removal of the appellant as guardian. The appellate court stated: "Without the inherent power to *sua sponte* consider removal, the court could find itself bound to a guardian acting contrary to the interest of the ward, if no interested party is available to initiate the proceedings by motion or petition." Id. at *2.

**{¶ 55}** The parents do not contest that had the board sent a letter to the probate court, the court could have sua sponte initiated a hearing on whether to remove them as guardians. Instead, they seem to argue that because the information came in the form of a motion from the board, the probate court was barred from acting. Form, however, should not be allowed to triumph over the substance of the issue involved.

11

**{¶ 56}** We also do not agree that it is mere speculation that the probate court would have acted if the board had simply notified the court of what had occurred with John's service providers. The board had participated in the hearings on the parents' request to be appointed guardians, and although the board ultimately supported the application, it expressed concern over several of the mother's decisions regarding her son. Information obtained from the board actually led the probate court to warn the mother that the court would not hesitate to appoint another guardian if she failed to make good decisions. There was sufficient cause for the probate court to call the guardian in for a hearing after it heard allegations that, three months later, one of the guardians arrived unexpectedly late at night and intoxicated at the home of John's service providers and threatened to remove him from a stable placement.

**{¶ 57}** Because the court of appeals did not address the merits of the probate decision to remove the parents as guardians, this matter must be remanded to that court for resolution of the parents' second through fourth assignments of error.

## Conclusion

**{¶ 58}** We hold that the General Assembly has not granted a county board of developmental disabilities the express or implied power to file a motion to remove a guardian. Nonetheless, the plenary power of the probate court as the superior guardian allows it to investigate whether a guardian should be removed upon receipt of sufficient information that the guardian is not acting in the ward's best interest. Thus, the court of appeals erred when, based on its holding that the board lacked standing, it summarily ruled that the trial court erred in removing the parents as guardians and when it mooted the assignment of error challenging the removal order as being against the manifest weight of the evidence. We therefore affirm the judgment of the Eleventh District in part, vacate it in part, and remand

the matter to the court of appeals for resolution of the parents' second and third assignments of error.

Judgment affirmed in part

and vacated in part,

and cause remanded.

LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., concur in part and dissent in part.

BROWN, C.J., not participating.

_____

**O'DONNELL, J., concurring in part and dissenting in part.**

{¶ 59} While I concur with the majority that a county board of developmental disabilities does not have the express or implied authority to file a motion to remove the guardian of an incompetent adult, I respectfully dissent from the majority's holding that the probate court, with its plenary authority as the superior guardian, may, upon notice from a county board of developmental disabilities, conduct proceedings to remove a guardian.

{¶ 60} The Geauga County Board of Developmental Disabilities filed a motion in the probate court to remove Joseph and Gabriele Spangler as guardians of their son, John. The Spanglers moved to dismiss the motion, arguing that the board lacked statutory authority and standing to file such a motion. The probate court joined the board as an interested party in the matter, denied the Spanglers' motion to dismiss, and then removed them as John's guardians. On appeal, the Eleventh District Court of Appeals reversed the decision of the probate court, concluding that the board did not have the statutory authority to file a motion to remove a guardian and thus had no standing to seek removal of a guardian.

{¶ 61} The board appealed that decision to this court, and we accepted for review three propositions of law: (1) a county board of developmental disabilities has the right and the ability to request the probate court to take action in the best

interest of the ward, (2) the county board has standing to move the probate court to remove an unsuitable guardian, and (3) the county board has standing to participate in the probate court proceedings as an interested party. *In re Guardianship of Spangler*, 121 Ohio St.3d 1498, 2009-Ohio-2511, 907 N.E.2d 323.

**{¶ 62}** In its merit brief, the board merged its third proposition of law into the second and added a third proposition of law focused on the authority of the probate court, not the standing of the county board: "A probate court has authority to initiate and conduct proceedings to remove a guardian based on a motion from a Board of Developmental Disabilities." As the board did not raise this issue in its memorandum in support of jurisdiction, it is not properly before us, and we should decline to address it now. See *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 87, 572 N.E.2d 673 (holding that an issue not raised or even alluded to in appellant's memorandum in support of jurisdiction is not properly before the court); *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶ 18 (declining to address an argument not raised by appellant in its memorandum in support of jurisdiction).

**{¶ 63}** Here, if the issue were properly before us, I would disagree with the majority's conclusion that a probate court has plenary authority to act upon the information brought before it irrespective of the powers and duties of a county board. As we stated in *In re Guardianship of Hollins*, 114 Ohio St.3d 434, 2007-Ohio-4555, 872 N.E.2d 1214, "probate courts are courts of limited jurisdiction and are permitted to exercise only the authority granted to them by statute and by the Ohio Constitution." Id. at ¶ 11, citing *Corron v. Corron* (1988), 40 Ohio St.3d 75, 77, 531 N.E.2d 708. R.C. 2101.24(C) grants the probate court "plenary power at law and in equity to dispose fully of any matter that is *properly* before the court." (Emphasis added.)

{¶ 64} The matter before the probate court in this case concerned a motion to remove John's parents as his guardians filed by the Geauga County Board of Developmental Disabilities. Thus, the question for this court's determination would be whether the board's motion was properly before the probate court. Because a county board of developmental disabilities does not have the express or implied authority to file a motion to remove the guardian of an incompetent, its motion to remove the Spanglers as John's guardians was never properly before the court. Consequently, the court lacked the plenary power to remove John's parents as his guardians, and in doing so, the court exceeded its limited statutory jurisdiction.

{¶ 65} Accordingly, I would affirm the decision of the Eleventh District Court of Appeals and remand the case to the trial court for further proceedings.

PFEIFER, J., concurs in the foregoing opinion.

_____

David P. Joyce, Geauga County Prosecuting Attorney, and J.A. Miedema, Assistant Prosecuting Attorney; and Hickman & Lowder Co., L.P.A., Franklin J. Hickman, and Judith C. Saltzman, for appellant Geauga County Board of Developmental Disabilities.

Ohio Legal Rights Service, Derek S. Hamalian, Jason C. Boylan, and Kerstin Sjoberg-Witt, for appellee John Spangler.

Law Office of Pamela Walker Makowski and Pamela Walker Makowski, for appellees Joseph and Gabriele Spangler.

Richard Cordray, Attorney General, Benjamin C. Mizer, Solicitor General, David M. Lieberman, Deputy Solicitor General, and Elizabeth G. Hartnett, Assistant Attorney General, urging reversal for amicus curiae state of Ohio.

Shane Egan, urging reversal for amicus curiae Advocacy and Protective Services, Inc.

_____