[Cite as *In re Guardianship of Smith*, 2011-Ohio-6496.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CLARK   COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF | : | |
| THE GUARDIANSHIP OF: | : | Appellate Case No. 2011-CA-09 |
| | : | |
| CARL SMITH, an Incompetent | : | Trial Court Case No. 20012036 |
| | : | |
| | : | |
| | : | (Probate Appeal from |
| | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of December, 2011.

. . . . . . . . . . .

PEGGY STEWART, 2318 Paradise Lane, Springfield, Ohio 45502
        Appellant, *pro se*

SHANE EGAN, Atty. Reg. #0038913, 4110 North High Street, 2nd Floor, Columbus, Ohio 43214
        Attorney for Appellee, Advocacy & Protective Services

. . . . . . . . . . . .

FAIN, J.

{¶ 1}   Following a remand from this court (see *In re Guardianship of Carl Smith*, Clark App. No. 09CA0069, 2010-Ohio-4528), the Clark County Probate Court again decided to remove appellant Peggy Stewart as guardian of her mentally disabled adult son, Carl Smith.

Stewart contends that the trial court erred by failing to follow the mandate from this court. She also contends that the trial court erred by failing to provide a court-ordered report to her and by permitting the prosecutor to represent the Board of Developmental Disabilities. Finally, Stewart claims that the Court lacked subject-matter jurisdiction.

{¶ 2} We conclude that the Probate Court did not fail to follow our mandate. We further conclude that Stewart has failed to demonstrate either error or prejudice arising from the fact that the prosecutor appeared and asked questions at the hearing, or from the use of a court investigator's report. We further conclude that the trial court had subject-matter jurisdiction.

{¶ 3} Accordingly, the order of the trial court from which this appeal is taken is Affirmed.

I

{¶ 4} Carl Smith is an adult with Down Syndrome. He was raised by his mother, Peggy Smith (now Stewart). In 2001, when Smith reached the age of majority, his mother was appointed guardian of his person. Smith continued to reside with his mother at her home in Springfield. In 2005, James Stewart moved into the residence occupied by Peggy and Carl. James had recently been released from a fourteen-year prison term.[1]

{¶ 5} Some time in 2007, caregivers reported that Carl claimed James had slapped him. There was no physical evidence to substantiate the claim, and the matter was closed. At some point, James and Peggy were married. In 2008, Carl alleged that James had beaten him with a belt. Bruising and a cut were observed on Carl's legs. James was arrested and

---

[1] Stewart, a Tier III sex offender, was convicted of Rape.

charged with felony Assault, with a specification under R.C. 2903.13(C)(1) that James was a caretaker of the victim. A no-contact order was entered requiring James to stay away from Carl.

{¶ 6} James was observed violating the no-contact order; he was arrested. Following a bench trial in which he represented himself, James was found guilty of misdemeanor Assault, with a finding that the State had not proven the caretaker specification. James was sentenced to ninety days in jail.

{¶ 7} In the meantime, the Clark County Probate Court was apprised of the assault and scheduled a hearing on the matter. In June 2009, the Court terminated Peggy Stewart's guardianship and appointed Advocacy and Protective Services, Inc. (APSI) as guardian of Carl Smith's person. Peggy appealed from the order terminating her as guardian. We reversed the order, noting that the Probate Court's decision was predicated largely upon the fact that James had been convicted for assault. *In re Guardianship of Carl Smith*, Clark App. No. 09CA0069, 2010-Ohio-4528, ¶ 22. In a separate appeal, we had reversed James Stewart's conviction, holding that the trial court had erred by permitting James to represent himself. Id. at ¶ 23, citing *State v. Stewart*, Clark App. No. 2009-CA-36, 2010-Ohio-3657. Therefore, the order terminating Peggy Stewart as guardian was reversed, and this cause was remanded to permit the trial court to "defer action on the [guardianship] matter until after the issue of James Stewart's criminal liability is settled." Id. at ¶ 24.

{¶ 8} The trial court then issued an order maintaining the status quo until the disposition of James Stewart's criminal case became final. The trial court was later informed by the Clark County Prosecutor that the State had decided not to re-try James Stewart, because

he had already served his jail sentence and would not receive any more punishment as a result of a retrial and conviction. The trial court then set the guardianship issue for another hearing, which was held in January 2011.

{¶ 9} Following that hearing, the trial court rendered a decision in which it made the following findings:

{¶ 10} "The testimony at the January 25th hearing reveals that in September of 2008 Carl Smith made an allegation of physical abuse by James Stewart. A number of his caregivers observed red marks and bruising to his leg and back, captured in Exhibits A and B, that Carl Smith repeatedly indicated were caused when James Stewart struck him with a belt. At the time of the incident, Peggy Stewart originally conceded that James Stewart had struck Carl Smith with a belt, but only after Carl had kicked James. Per testimony, to this day Carl Smith expresses his fear of James Stewart and will cry at the suggestion that he might be returned to live in the same residence of James Stewart.

{¶ 11} "Mrs. Stewart now doubts that the injuries were as a result of a belt or that James Stewart caused the injuries in Exhibits A and B. The Court notes here that this seems to be consistent with Peggy Stewart's persistent inclination to forgive and excuse James Stewart's conduct since he moved into the residence in 2005. Mr. Stewart was convicted in 1990 for rape and served fourteen years in the Ohio State Penitentiary for this crime of violence. Nevertheless, Mrs. Stewart maintains that he was innocent of that offense. Carl Smith made an allegation of physical abuse prior to the 2008 allegation. Mrs. Stewart discounts that allegation. Carl Smith has consistently expressed and displayed his fear of and displeasure with James Stewart over the past two years – most recently to this Court's

Investigator. This notwithstanding, Mrs. Stewart claims that Carl Smith is completely contented and comfortable in the presence of James Stewart.

{¶ 12} "Carl Smith is currently in a newly remodeled and newly furnished home which he shares with two other housemates and a twenty-four hour caregiver. He is happy, productive, engaged in activities and otherwise contented. While he loves his mother, Peggy Stewart, he remains very frightened of James Stewart to the point of tears. He has made his feelings very clear to many, including this Court's Investigator, that he does not want to return to his mother's care under all of these circumstances.

{¶ 13} "While the Court does not intend to cast aspersions on the effort of Peggy Stewart to serve as Carl Smith's Guardian in the past, nevertheless, this Court, as Superior Guardian herein, finds that her decision to introduce James Stewart into the household has posed in the past, and continues to pose a risk of harm, both physically and emotionally, to the person of Carl Smith. The Court believes that James Stewart is a violent offender and that he physically abused Carl Smith in 2008. The Court believes that there is a substantial risk that this abuse would continue in the future. The Court also believes, based upon the testimony, that reintroducing James Stewart into the life of Carl Smith would be emotionally, if not physically, traumatic to Carl Smith. This notwithstanding, Peggy Stewart has made the decision to keep James Stewart in her life and in her residence. If reappointed Guardian, she would bring Carl Smith back into this residence and back with James Stewart. This is not in the best interests of Carl Smith."

{¶ 14} The Probate Court again ordered the removal of Peggy Stewart as guardian, and ordered that APSI continue to serve as Smith's guardian. From this order, Peggy Stewart

appeals.

II

{¶ 15} Stewart's First Assignment of Error is as follows:

{¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHTS UPON THE COURT ACQUIRING SUBJECT MATTER JURISDICTION TO ENFORCE THE OPINION OF THE HIGHER COURT THEN EXERCISED DISCRETION INCONSISTENT WITH THE APPELLATE COURT'S OPINION."

{¶ 17} In this argument, Stewart objects to the fact that the Probate Court, upon remand, failed to reinstate her as guardian. She contends that the trial court erred by entering an interlocutory order directing that the status quo – with APSI as the guardian – would be maintained until James Stewart's criminal prosecution was concluded. Stewart contends that this clearly violates our ruling on remand.

{¶ 18} We note that while our opinion in the prior appeal in this case stated that reversing the order terminating Stewart's guardianship would allow the Probate Court to defer action "until after the issue of James Stewart's criminal liability is settled[,]" that opinion did not mandate that the Probate Court immediately reinstate Stewart as guardian.

{¶ 19} The Probate Court chose to leave APSI as the guardian until it could hold further hearings. The hearing and final order occurred within four months of our judgment reversing the termination of the guardianship. We find no error in the Probate Court's decision to leave Carl Smith in a safe environment in the interim, pending further proceedings; the Probate Court appears to have been attempting to minimize disruptions in Carl's life that

might arise from two unnecessary changes in the status quo, if the ultimate result of further proceedings were to order, again, Peggy Stewart's removal as guardian.

{¶ 20} Furthermore, to the extent that this assignment of error is addressed to the interim order, it is moot, since a permanent order has since been entered removing Peggy Stewart as guardian.

{¶ 21} Stewart's First Assignment of Error is overruled.

III

{¶ 22} Stewart's Second Assignment of Error states as follows:

{¶ 23} "THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT BY ADMITTING DEMONSTRATIVE EVIDENCE THROUGH PARTIES THAT OCCUPY NO STANDING IN A GUARDIANSHIP HEARING AND CONSIDER A REPORT NOT PROPERLY BEFORE THE COURT."

{¶ 24} Stewart contends that it was error for the Clark County Prosecutor to represent the County Board of Developmental Disabilities at the hearing in this matter. She further contends that it was error for the Probate Court to consider the report of its investigator, because Stewart was not provided access to that report prior to the hearing.

{¶ 25} We turn first to the claim that the prosecutor improperly represented the County Board of Developmental Disabilities during the hearing held January 25, 2011. In support, Stewart cites 2009 Ohio Atty. Gen. Ops. No. 2009-050, which she contends disqualified the prosecutor from representing any of the parties at the hearing.

{¶ 26} In that opinion, the Attorney General opined that a "county prosecuting attorney has no authority to act as legal counsel for an organization or person seeking

guardianship of an adult with developmental disabilities * * *. " Id., paragraph one of the syllabus. But in the case before us, the Board was not seeking guardianship of Carl Smith; it was before the trial court solely to provide evidence resulting from its investigation of Carl's claim of abuse. In any event, Stewart has failed to indicate how she was prejudiced by the fact that the prosecutor appeared on behalf of the Board. We find this argument without merit.

{¶ 27} With regard to Stewart's argument concerning the report of the court's investigator, we note that Stewart references R.C. 2317.39. That statute states that a court cannot consider any report created during a court-ordered investigation unless the report is "made readily available and accessible to all parties to the case or their counsel." R.C. 2317.39. Stewart argues in her appellate brief that she was not aware of the existence of the report and that she did not acquire the report until after the hearing.

{¶ 28} We begin by noting that in a case cited by Stewart – *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471 – the Supreme Court of Ohio has held that "[g]uardianship proceedings, including the removal of a guardian, are not adversarial but rather are in rem proceedings involving only the probate court and the ward. * * * Because the probate court is the superior guardian, the appointed guardian is simply an officer of the court subject to the court's control, direction, and supervision. * * * The guardian, therefore, has no personal interest in his or her appointment or removal." Id. at ¶ 53. (Citations omitted.)

{¶ 29} Under the holding in *Spangler*, Stewart is not a party to the proceeding below; her status is that of an officer of the court for so long as she remained the court's appointed

guardian. Thus, R.C. 2317.39 is inapplicable – Stewart is not a party. Furthermore, we note that Stewart has failed to refer to any portion of the record to support her claim that she was not provided with a copy of the report. See, App.R. 16(A)(3). Since she has only provided a partial transcript of the hearing, we have no means to review the record for this alleged error. See, App.R. 9. Finally, Stewart fails to set forth any claim of prejudice resulting from the trial court's consideration of the report and the alleged fact that it had not been provided to her.

{¶ 30} The Second Assignment of Error is overruled.

IV

{¶ 31} Stewart's Third Assignment of Error provides:

{¶ 32} "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT EXERCISED SUBJECT MATTER JURISDICTION THAT WAS NOT CONFERRED UPON IT AND THE MATTER IS NOT PROPERLY BEFORE THE COURT."

{¶ 33} Stewart contends that the Probate Court did not have subject-matter jurisdiction over the guardianship. In support, she contends that this action began when the "court['s] investigator based its report on a Clark County Board of Developmental Disabilities investigator that acted outside her statutory authority in reporting to the trial court instead of the board." Thus, she argues that the Board's investigator acted outside the authority conferred by R.C. 5126.221 and 5126.313. Stewart claims that the Board investigator should have filed the report with the Board first, then the Board should have investigated the report "in accordance with statute, and then provided notification to the Probate Court." So the essence of her argument is that the Probate Court was only made aware of a potential problem

with the guardianship when the Board, which did not act according to statute, gave the Court the information.

{¶ 34} We note that this issue was raised in Stewart's first appeal wherein we stated that since Stewart had failed to raise an objection with the Probate Court, she had waived any error in this regard. See, *In re Guardianship of Carl Smith*, Clark App. No. 09CA0069, 2010-Ohio-4528, ¶ 6-17.

{¶ 35} Here, Stewart makes her argument in the context of a claim that the Probate Court lacked subject-matter jurisdiction as a result of the claimed irregularity in the manner in which the investigator's report made its way to the attention of the court. But under *In re Guardianship of Spangler*, supra, a case Stewart cites in her brief the Supreme Court of Ohio held that: " * * * , the plenary power of the probate court as the superior guardian allows it to investigate whether a guardian should be removed upon receipt of sufficient information that the guardian is not acting in the ward's best interest." 2010-Ohio-2471, ¶ 58. It is apparent from the *Spangler* opinion that a probate court has plenary subject-matter jurisdiction to consider whether a guardian it has appointed should be continued as guardian, regardless of how that issue comes to the attention of the court.

{¶ 36} Stewart's Third Assignment of Error is overruled.

V

{¶ 37} All of Stewart's assignments of error having been overruled, the order from which this appeal is taken is Affirmed.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Peggy Stewart
Shane Egan
Hon. Richard P. Carey