[Cite as *In re J.W.*, 2011-Ohio-5191.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   |                              |
|------------------------|---|------------------------------|
|                        | : | JUDGES:                      |
| IN THE MATTER OF:      | : | William B. Hoffman, P.J.     |
|                        | : | Sheila G. Farmer, J.         |
| J.W. AND P.W.          | : | Julie A. Edwards, J.         |
|                        | : |                              |
|                        | : | Case Nos. 11-CA-2, 11-CA-3,  |
|                        | : | 11-CA-4 and 11-CA-5          |
|                        | : |                              |
|                        | : |                              |
|                        | : | O P I N I O N                |

CHARACTER OF PROCEEDING:      Civil Appeal from Fairfield County
                              Court of Common Pleas, Probate
                              Division, Case Nos. 00066857 and
                              00066856

JUDGMENT:                     Reversed and Remanded

DATE OF JUDGMENT ENTRY:       October 3, 2011

APPEARANCES:

For Appellants                      For  Appellant Echo Brown

SUSAN WASSERMAN                     STEVEN D. ROWE
5350 East Main Street               ERICA ANN PROBST
Columbus, Ohio  43213               Kemp, Schaeffer & Rose Co., LPA
                                    88 West Mount Street
                                    Columbus, Ohio  43213

For Guardian Jeffrey Feyko

JOHN SNIDER
Stebelton Aranda & Snider
109 N. Broad Street, Ste. 200
Lancaster, Ohio  43130

*Edwards, J.*

{¶1}   Appellants, Echo Brown, J.W. and P.W., appeal from the December 14, 2010, Entries of the Fairfield County Probate Court.

STATEMENT OF THE FACTS AND CASE

{¶2}   On October 7, 2010, Jeffrey Feyko filed an Application in Fairfield County Probate Case No. 00066856 to be appointed the Guardian of appellant J.W. The application alleged that appellant J.W. was incompetent due to senile dementia, mental impairment and an inability to care for himself. On the same date, Feyko filed an application in Fairfield County Probate Case No. 00066857 to be appointed the Guardian of appellant P.W. The application alleged that appellant P.W. was incompetent due to dementia, mental impairment and an inability to care for herself. Feyko had no relationship to either appellants J.W. or P.W. On the same day, Feyko filed expert evaluations in both cases from a licensed physical opining that guardianships should be established for both appellants J.W. and P.W.

{¶3}   A hearing on the applications was scheduled for October 28, 2010.

{¶4}   On October 7, 2010, Feyko also filed motions in both cases asking that the court grant him the authority to place and maintain appellants J.W. and P.W. in a nursing home and/or medical facility and to sign any documents required by the same during the pendency of the applications for guardianship. Pursuant to Entries filed in both cases on the same day, the motions were granted.

{¶5}   Thereafter, appellants P.W. and J.W. filed an objection in both cases to the appointment of Feyko as Guardian. In their objections, they asked that if the trial court determined that Guardianships were necessary, appellant Echo Brown, the

spouse of their grandson, be appointed their Guardian. Appellants J.W. and P.W., on October 14, 2010, filed waivers of notice and consent, indicating that they consented to the appointment of appellant Echo Brown as Guardian. Appellant Echo Brown, on October 14, 2010, filed applications in both cases to be appointed Guardian. In her applications, she indicated that the prospective wards were incompetent by reason of "mental impairment as a result of mental or physical illness or disability."

{¶6}    As memorialized in Entries filed in both cases on October 22, 2010, the trial court scheduled an oral hearing on the objection to Jeffrey Feyko as Guardian for November 29, 2010.

{¶7}    On October 22, 2010, Charlene Miller, a court investigator, filed reports in both cases on the proposed guardianship. She recommended that Jeffrey Feyko be appointed Guardian for both appellant J.W. and appellant P.W. because they needed assistance to care for their personal, medical and/or financial decisions.

{¶8}    Subsequently, on November 4, 2010, Rebecca Cooper, a Certified Long Term Care Ombudsman from Catholic Social Services, filed a letter with the trial court objecting to the appointment of Feyko as Guardian. Cooper, in her letter, indicated that her office had been contacted in order to investigate a complaint that appellants J.W. and P.W. were being held against their will at Crestview Manor Nursing Home and that she was aware that Feyko had applied for Guardianship after receiving a referral from Crestview. Cooper, in her letter, stated, in relevant part, as follows:

{¶9}    "Mr. Feyko requested and was granted a motion providing him with the authority *to place and maintain the proposed ward in a nursing home facility and/or medical facility during the pendency of the application for guardianship. According to*

*both the nursing home staff and Adult Protective Services staff, the immediate health and well-being of the proposed ward mandate continued nursing home placement.*

*{¶10}* "**I believe that this motion is based upon competing interests.** Crestview Manor is currently suing these individuals, and it is assumed that their referral to Mr. Feyko was made under their assumption that the money owed will be more easily obtained through a guardian. I am also aware that the **Adult Protective Services caseworker, Patty, has previously and currently represented herself to our agency as an employee of Mr. Feyko.** The Adult Protective Services caseworker therefore demonstrates a conflict of interest in her role to make recommendations that these individuals require continued nursing home placement during the pending status of the guardianship application."

**{¶11}** Appellants J.W. and P.W., on November 10, 2010, filed letters in both cases asking that they be provided with legal representation in order to contest Jeffrey Feyko's Applications for Guardianship. They requested that an oral hearing be held so that they could testify on their own behalf. In response to such letter. Charlene Miller, the Court Investigator, made a return visit to Crestview Manor Nursing Home and spoke with appellants J.W. and P.W. In a letter to the court filed on November 19, 2010, Miller indicated that she explained to them and they were not indigent, that the trial court could not appoint them counsel and that they would need to seek counsel on their own. Miller, in her letter, further indicated that appellants J.W. and P.W. were "shocked and upset stating that they never wrote to the court requesting an attorney", although they admitted the letter contained their signatures.

{¶12} A hearing on Feyko's Applications for Guardianship was held on November 29, 2010. At the hearing, both appellant J.W. and P.W., who were not represented by counsel, indicated to the trial court that they wanted appellant Echo Brown to be the Guardian. The only witness to testify was Patricia Ciripompa, an investigator for Adult Protective Services (APS) who is employed by Fairfield County Job and Family Services. Ciripompa testified that APS has had nine referrals regarding appellants J.W. and P.W. starting in 2000. She testified that in 2000, appellant J.W. was identified with a history of alcohol and drug abuse and that the house was very cluttered. She testified that the caregiver, who was a relative, had a hard time because appellants J.W. and P.W. did not comply and would not allow APS into their house. In 2003, a caseworker attempted to get into the home, which had a bad odor coming from it, but was refused admittance and the case was closed. The following is an excerpt from Ciripompa's testimony:

{¶13} "Q. What is your understanding, Patty, with regard to [appellants J.W. and P.W.] accepting or agreeing to accept the services of any family member who has offered to assist them in the past?

{¶14} "A. Since the time of our first referral and in getting to know a little bit more of the family history throughout all nine referrals, what we have encountered is a very consistent pattern.

{¶15} "Q. Which is?

{¶16} "A. [Appellants J.W. and P.W.] will accept help temporarily in crisis from any of their family members, but then very shortly afterward will threaten the family members, accuse them of stealing, accuse them of abuse, kick them out of the house.

At one point they accepted home health temporarily, but then it was reported to us on, during I think back in 2009 that, uh, one nurse was threatened with a gun by [appellant J.W.] Um, family members have tried, I think multiple family members have tried and multiple family members have reported us, to us over time. Um, [appellants J.W. and P.W.] are, 'agitated, argumentative and threatening me,' whoever the caregiver was at the time reporting, 'horribly.'

**{¶17}** "'There are guns in the home and they, [appellants J.W. and P.W.], do threaten to use them.' '[Appellants J.W. and P.W.] accuse us, family members, of stealing.' We were contacted when [appellants J.W. and P.W.], um, were in their home at one point by a family member who was frantic and said they are tearing self (sic) up and they are very confused and they are livid that some of their things were thrown away in an attempt to clean the home. At one point a family member told us, 'I feel strongly that these folks need placement for care. They have run off all the family who could or would try to help them and there is no one left to take care of them.' 'They are confused, shaky and argumentative.' Every family member that we've, whom we have talked with, um, in the past, consistently, has been concerned about others in the family blaming them for one thing or another. They blame, have blamed each other. [Appellants J.W. and P.W.] have kind of kept this going. This is a pattern of always stirring the pot with family members and making sure that they were always in a state of turmoil." Transcript at 8-10.

**{¶18}** Based on the foregoing, Ciripompa opined that no family member should be appointed Guardian, but rather that an objective third-party who was not living or residing with appellants J.W. and P.W. should be appointed.

**{¶19}** On cross-examination by appellant Echo Brown's counsel, Ciripompa stated that she had not consulted with appellant Echo Brown. She testified that she thought that appellants J.W. and P.W. should have round-the-clock care in a nursing home.

**{¶20}** Pursuant to Entries filed in both cases on December 14, 2010, the trial court overruled and dismissed the objections to the Applications of Jeffrey Feyko as Guardian and granted Feyko's Applications. The trial court, in its Entries, found appellant Echo Brown to be unsuitable to serve as a Guardian and found both appellant J.W. and appellant P.W. to be incompetent.

**{¶21}** On January 11, 2011, appellant Echo Brown filed Notices of Appeal from the trial court's two December 14, 2010 Entries. Her appeals were assigned Case Nos. 11 CA 2 and 11 CA 3. On the same date, appellant P.W. filed a Notice of Appeal from the trial court's December 14, 2010, Entry in her case. Her appeal was assigned Case No. 11 CA 4. Also on January 11, 2011, appellant J.W. filed a Notice of Appeal from the trial court's December 14, 2010, Entry in his case. His appeal was assigned Case No. 11 CA 5. Pursuant to a Judgment Entry filed on January 27, 2011, this Court consolidated the appeals.

**{¶22}** On April 25, 2011, a Suggestion of Death was filed, stating that appellant J.W. had passed away on April 20, 2011.

**{¶23}** Appellants now raise the following assignments of error on appeal:

**{¶24}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY APPROVING THE APPLICATION FOR GUARDIANSHIP OF J.W. AND P.W. BECAUSE IT DID NOT

COMPLY WITH THE MANDATES SET FORTH IN SECTION 2111.02 OF THE OHIO REVISED CODE.

**{¶25}** "II. THE TRIAL COURT ORDER APPROVING THE APPLICATION FOR GUARDIANSHIP OF J.W. AND P.W. WAS IN ERROR BECAUSE THE APPLICANT DID NOT PROVIDE CLEAR AND CONVINCING EVIDENCE OF J.W. AND P.W.'S INCOMPETENCE.

**{¶26}** "III. THE TRIAL COURT ORDER APPROVING THE APPLICATION FOR GUARDIANSHIP OF J.W. AND P.W. WAS IN ERROR BECAUSE THERE EXISTED LESS RESTRICTIVE ALTERNATIVES."

I

**{¶27}** Appellants Echo Brown and P.W.,[1] in their first assignment of error, argue that the trial court erred by approving the Application for Guardianship of appellant P.W. because the same did not comply with the mandates set forth in R.C. 2111.02.

**{¶28}** R.C. 2111.02 states, in relevant part, as follows: "(C) Prior to the appointment of a guardian or limited guardian under division (A) or (B)(1) of this section, the court shall conduct a hearing on the matter of the appointment. The hearing shall be conducted in accordance with all of the following: …

**{¶29}** "(3) If the hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the burden of proving incompetency shall be by clear and convincing evidence;…

---

[1] Due to the Suggestion of Death of J.W. that was filed with this Court on April 25, 2011, the assignments shall be addressed in relation to appellants P.W. and Echo Brown only.

**{¶30}** "(7) If the hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the alleged incompetent has all of the following rights:

**{¶31}** "(a) The right to be represented by independent counsel of the alleged incompetent's choice;

**{¶32}** "(b) The right to have a friend or family member of the alleged incompetent's choice present;

**{¶33}** "(c) The right to have evidence of an independent expert evaluation introduced;

**{¶34}** "(d) If the alleged incompetent is indigent, upon the alleged incompetent's request:

**{¶35}** "(i) The right to have counsel and an independent expert evaluator appointed at court expense;

**{¶36}** "(ii) If the guardianship, limited guardianship, or standby guardianship decision is appealed, the right to have counsel appointed and necessary transcripts for appeal prepared at court expense."

**{¶37}** Appellants specifically maintain, in part, that appellant P.W. was denied her right to be represented by independent counsel of her choice at the November 29, 2010, oral hearing. As is stated above, appellants P.W., on November 10, 2010, filed letter asking that she be provided with legal representation in order to contest Jeffrey Feyko's Application for Guardianship. In a letter to the court filed on November 19, 2010, Charlene Miller, the court investigator, indicated that she explained to appellant P.W. that she was not indigent, that the trial court could not appoint her counsel and

that she would need to seek counsel on her own. Miller, in her letter, further indicated that appellant P.W. was "shocked and upset" and indicated that she never wrote to the court requesting an attorney, although she admitted the letter contained their signatures.

{¶38} We note that, under R.C. 2111.02(C)(7)(a), the alleged incompetent is afforded the right to be represented by independent counsel of his or her choice. At the hearing on November 29, 2010,  appellant P.W., who previously had filed a written request for counsel with the trial court, was unrepresented by counsel, and was not advised of her right to be represented by independent counsel.  No inquiry was made into either her desire to obtain counsel or her financial ability to do so. Based on the fact that, despite her written request for counsel, she later indicated to Charlene Miller that she had never requested an attorney, the trial court should have inquired into such matter to ensure that appellant P.W. was not confused as to her rights.  We note that there is no indication that appellant P.W. waived her right to counsel. In contrast, see *In the Matter of Furgione* (Nov. 2, 1995), Cuyahoga App. No. 67715, 1995 WL 643709. In such case, the alleged incompetent waived his right to counsel in open court and there was no evidence that he was unable to make an intelligent waiver of his right to counsel.

{¶39} Based on the foregoing, appellants' first assignment of error is sustained.

II, III

{¶40} Appellants, in their second and third assignments of error, argue that the trial court erred in approving Feyko's Application for Guardianship of appellant P.W. when there was not clear and convincing evidence of her incompetence and where there existed less restrictive alternatives.

{¶41} Based on our disposition of appellants' first assignment of error, appellants' second and third assignments of error are moot.

{¶42} Accordingly, the judgment of the Fairfield County, Probate Division, is reversed and this matter is remanded for further proceedings.

By: Edwards, J.

Farmer, J. concurs

Hoffman, P.J. dissents

_____

_____

_____

JUDGES

JAE/d0729

*Hoffman, P.J., dissenting*

**(¶43)** I respectfully dissent from the majority opinion.

**(¶44)** There is no record evidence to demonstrate P.W. was indigent. The court's investigator Charlene Miller explained to P.W. she was ineligible for appointed counsel. Appellee argues the applications for appointment by both Feyko and Brown indicate sufficient assets to render P.W. ineligible. Notably P.W. offers no rebuttal to this argument in her reply brief to this Court.

**(¶45)** Given the fact P.W. did not contest the appointment of a guardian but merely desired Echo Brown be selected, and given the fact Echo Brown was represented by counsel at the hearing, I find P.W.'s interests were adequately protected. There is no affirmative record indication of the denial of the right to counsel nor did P.W. request a continuance to secure counsel.

**(¶46)** I would overrule Appellant's first assignment of error.

_____

HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                   :
                                    :
    J.W. AND P.W.                 :
                                    :
                                    :
                                    :         JUDGMENT ENTRY
                                    :
                                    :
                                    :
                                    :         CASE NOS. 11-CA-2, 11-CA-3,
                                              11-CA-4 AND 11-CA-5

    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Probate Division, is reversed and remanded to the trial court for further proceedings.  Costs assessed to Jeffrey Feyko.

                             _____

                             _____

                             _____

                                     JUDGES