[Cite as *In re A.E.R.*, 2018-Ohio-1685.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| IN THE MATTER OF | JUDGES:<br>Hon. John W. Wise, P.J. |
| THE GUARDIANSHIP OF: | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| A.E.R. AND C.S.R. | Case Nos. 17 CAF 06 0040 and<br>17 CAF 06 0041 |
|  | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Probate Division, Case Nos. 16-12-1634-PGU and 16-12-1635-PGU |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 27, 2018 |

APPEARANCES:

| For Appellee Rebekah B. | For Appellant Susan R. |
|---|---|
| EIMEAR M. BAHNSON<br>COLLEEN L. MARSHALL<br>LEEANN M. MASSUCCI<br>250 Civic Center Drive, Suite 600<br>Columbus, Ohio 43215 | JOHN J. KULEWICZ<br>ELIZABETH S. ALEXANDER<br>52 East Gay Street<br>Post Office Box 1008<br>Columbus, Ohio 43216 |
| JAY E. MICHAEL<br>729 South Front Street<br>Columbus, Ohio 43206 | SCOTT M. GORDON<br>82 North Franklin Street<br>Delaware, Ohio 43015 |

*Wise, P. J.*

{¶1}   Appellant Susan R. appeals the decision of the Delaware County Court of Common Pleas, Probate Division, which ruled in favor of Appellee Rebekah B. following a trial on competing guardianship applications regarding the parties' two nieces. The relevant facts leading to this appeal are as follows.

{¶2}   The minor children at the center of this matter are A.E.R., born in 2011, and C.S.R., born in 2013. The children's parents are Todd and Rachel R., who both died on December 4, 2016. In their last wills and testaments, executed in 2014, Todd and Rachel each had nominated Appellant Susan R. (Todd's sister) and Appellee Rebekah B. (Rachel's sister), "in the order named," to serve as guardian of A.E.R. and C.S.R.

{¶3}   The tragic death of the parents resulted from Todd's fatal shooting of Rachel in front of A.E.R. and C.S.R., and his subsequent suicide at a nearby state park. In the preceding few months, during the autumn of 2016, Todd and Rachel had become estranged, and Todd was spending weekends at the Wheelersburg, Ohio, home of Appellant Susan (his younger sister) and her spouse, Carol. Early on the afternoon of December 4, 2016, Todd had contacted Appellant Susan by text message, referencing a "note" he had left in the guest room of appellant's home. Appellant went back to her house and found the note, which included a reminder of the storage location for his and Rachel's wills, and the statement that "it makes the most sense for you and Carol to primarily care for the girls ***." Appellant thereupon contacted Todd by phone in Columbus. At Todd's behest, appellant and Carol departed southern Ohio and headed to Columbus. Numerous calls and texts were exchanged during the drive. By the time they arrived, Todd had departed the area, but he told them by phone from an undisclosed location that he had

"hurt" Rachel. At that point, appellant and Carol called 911, and law enforcement officials responded.

{¶4}    On January 4, 2017, the probate court appointed appellant as emergency custodian of both children. A hearing on the emergency guardianship applications was conducted on January 6, 2017. After hearing the testimony, the probate court expressly adhered to the language of the parents' wills. The court further continued the emergency guardianship for an additional thirty days, subject to visitation rights and certain limitations. Emergency Hearing Tr. at 180-84.

{¶5}    The court, via a judgment entry, appointed appellant as limited guardian for both girls on February 3, 2017.

{¶6}    On March 13, 2017, a four-day guardianship trial commenced. Appellant's witnesses included her spouse, her older sister, fellow faculty members and administrators at the school at which she teaches and coaches, her cousin, other family members, her childhood best friend, her mother and appellant herself. The guardian *ad litem* and the probate court investigator also testified. Appellee's witnesses were the two ex-wives of the children's deceased father, her brother, her sister, her sister-in-law, a detective from the Delaware County Sheriff's Office, her first cousin, her mother and appellee herself.

{¶7}    During the trial, the probate court allowed use of hearsay evidence in regard to the deceased parents, the guardianship applicants, and some of the relatives, over the continuing objection of appellant's counsel. The probate court took the guardianship decision under advisement following the trial.

{¶8} On May 31, 2017, the probate court issued a 34-page judgment entry naming appellee, the children's maternal aunt, as guardian for both children, despite the nomination in the wills and the guardian ad litem's recommendation that appellant, the children's paternal aunt, be named. The court recognized that Rachel and Todd each had indicated a "clear desire for an ordered preference" in their wills, with their first choice being Susan. Entry at 29. The probate court further observed: "The question, then, is whether the testimony in this matter rises to the level of good cause shown or disqualifies [appellant], such that the Court should move on to the parents' secondary designation of [appellee]." *Id.* The court then answered its question in the affirmative, and ultimately ruled that "[f]or the reasons outlined in section XI, above, the appointment of [appellant] *** would not be in the [children's] best interests and good cause has been shown to overcome the primary designation * * *." Entry at 33.

{¶9} On June 21, 2017, appellant filed a notice of appeal. She herein raises the following four Assignments of Error:

{¶10} "I. THE PROBATE COURT MISINTERPRETED THE TWO EXCEPTIONS TO R.C. 2111.121(B), WHICH PROVIDE THAT, WHEN APPOINTING THE GUARDIAN OF A MINOR CHILD, THE COURT 'SHALL MAKE ITS APPOINTMENT IN ACCORDANCE WITH' A TESTAMENTARY NOMINATION 'EXCEPT FOR GOOD CAUSE SHOWN OR DISQUALIFICATION.'

{¶11} "II. THE PROBATE COURT ABUSED ITS DISCRETION BY APPOINTING THE SECONDARY NOMINEE AS GUARDIAN ON THE BASIS OF NON-PROBATIVE EVIDENCE AS TO THE SECONDARY NOMINEE AND IN THE ABSENCE OF ANY

FINDING AS TO THE PRIMARY NOMINEE THAT THERE IS 'GOOD CAUSE' TO DISREGARD THE PARENTAL ORDER OF PREFERENCE.

{¶12} "III.  THE PROBATE COURT ABUSED ITS DISCRETION BY FINDING 'DISQUALIFICATION' OF THE PRIMARY NOMINEE BASED ON CONSIDERATIONS THAT ARE SUBJECTIVE IN NATURE, DO NOT RENDER HER INELIGIBLE TO SERVE AS GUARDIAN, AND WERE NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.

{¶13} "IV.  THE PROBATE COURT IMPROPERLY RELIED ON OTHERWISE INADMISSIBLE HEARSAY EVIDENCE IN A CONTESTED GUARDIANSHIP PROCEEDING."

I.

{¶14} In her First Assignment of Error, appellant contends the probate court committed reversible error in interpreting R.C. 2111.121(B) as applied to her guardianship application. We disagree.

{¶15} R.C. 2111.121(B) states in pertinent part that "*** except for good cause shown or disqualification, the [probate] court shall make its appointment in accordance with the person's most recent nomination [in a writing as described in division (A)]. ***." (Bracketed language added).

{¶16} We note the General Assembly, effective March 20, 2014, amended R.C. 2111.121(B), in response to the Uniform Power of Attorney Act. *See* 2013 Am.Sub. H.B. No. 126. The Ohio Supreme Court has indicated that a model act's official comment sections are instructive for interpreting Ohio law when the language is founded on the model act. *See Heritage Hills, Ltd. v. Deacon,* 49 Ohio St.3d 80, 82, 551 N.E.2d 125

(1990) (interpreting "consumer transactions" under R.C. Chap. 1345). Notably, the official comment to the Uniform Power of Attorney Act states that "[d]eference for the principal's autonomous choice is evident *** in the directive that the court shall appoint a fiduciary in accordance with the principal's most recent nomination." UNIF. POWER OF ATTORNEY ACT §108 (UNIF. LAW COMM'N 2017).

{¶17} Appellant herein properly posits that when parents have established an order of preference for guardianship, the court must determine, under R.C. 2111.121(B), whether there is either "good cause" not to appoint the primary nominee or the primary nominee is "disqualified." In the absence of either determination, the court must appoint the primary nominee.[1]

### The "Good Cause" Consideration

{¶18} Appellant initially asserts the probate court mistakenly quoted repealed language from the pre-2014 version of R.C. 2111.121(B), when the court noted that it had a duty to "examine whether the person nominated is 'competent, suitable, and willing to accept the appointment.' " *See* Judgment Entry at 28.[2] Appellant herein further challenges the probate court's observation that it *"should* make a nomination [sic]" in accordance with a valid writing nominating a guardian. *Id.* at 29 (emphasis added). However, we note the probate court on those same two pages of its judgment entry recited the correct statutory

---

[1]   The parties in the present appeal are not disputing the trial court's finding that the girls require a guardian.

[2]   We note the probate court at that juncture was relying on a limited portion of this Court's opinion in *In re Myers*, 5th Dist. Tuscarawas No. 2016 AP 05 0028, 2017-Ohio-603, 85 N.E.3d 217, ¶ 42, which in turn referenced a 1993 case, predating modern R.C. 2111.121(B), *In re Guardianship of Hafner*, 9th Dist. Summit No. 16073, 1993 WL 498365. In *Myers*, we nonetheless proceeded to review the lower court's "finding of good cause/disqualification" as per the modern version of the statute. *See id.* at ¶ 50, *et seq.*

language of "except for good cause shown or disqualification" found in modern R.C. 2111.121(B). We also note that toward the end of the trial, while the guardian ad litem was on the stand, the court stated: "And I think you're aware that the law in Ohio *** says that the court is to follow the recommendation made in the estate planning documents of the parties unless good cause is shown." Tr. at 968. We are therefore unpersuaded that the court's recitations in the entry represent a misinterpretation of the legal standard as urged by appellant.

{¶19} The remaining focus of appellant's present challenge to the probate court's analysis is that no "good cause" findings were made specifically "as to" her, either in Section XI or anywhere else in the judgment entry. Appellant asserts the court improperly "skipped directly" to consideration of Appellee Rebekah as guardian (Appellant's Brief at 13) and limited its findings as to the "good cause" exception to "whether good cause has been shown that granting guardianship to [appellee] would be in the best interests of the children." Judgment Entry at 29.

{¶20} In the judgment entry, the court essentially found "good cause" in support of Appellee Rebekah for eight reasons, which can be summarized in five categories: (1) Rebekah and her husband have two children and strong parenting techniques; (2) Rachel and Rebekah had similar parenting techniques; (3) Rachel had expressed an interest in moving back to the Waterford, Ohio, area; (4) Rachel's extended family in the Waterford area would provide support; and (5) Rachel had listed her mother and another sister as emergency school contacts. Entry at 29-30. In essence, appellant thus charges that the probate court misapplied R.C. 2111.121(B) by improperly weighing one applicant against another and not following the nominating preference in the parents' wills. In other words,

appellant maintains that in the case of consecutive guardianship nominations, where the testators have nominated two persons "in the order named," the protocol set forth in R.C. 2111.121(B) requires the court to focus first on the primary nominee before turning, in the event of "good cause shown or disqualification," to the secondary nominee. Appellant contends the probate court's approach instead constituted an improper "shortcut." Appellant's Reply Brief at 2.

{¶21} However, we find appellant's insistence on this type of rigid two-step process reads too much into the statute. At the outset, we are mindful that under R.C. 2111.50(A)(1), "[a]t all times, the probate court is the superior guardian of wards who are subject to its jurisdiction ***." As this Court recognized in *In re Myers*, 5th Dist. Tuscarawas No. 2016 AP 05 0028, 2017-Ohio-603, 85 N.E.3d 217, in making a determination as to who should serve as guardian, the probate court's primary responsibility is to ensure that the person appointed will act in the best interests of the ward. *Id.* at ¶ 43, quoting *In re Guardianship of Thomas*, 10th Dist. Franklin No. 01AP-448, 148 Ohio App.3d 11, 2002-Ohio-1037, ¶ 96 (internal quotations omitted). Notably, the Eighth District Court of Appeals has succinctly stated that under R.C. 2111.121(B) a probate court is required to appoint the primary designated nominee as guardian "unless there [is] a good reason not to, i.e., it would not be in the child's best interest." *In re I.B.*, 8th Dist. Cuyahoga No. 102373, 2015-Ohio-4181, ¶ 52.

{¶22} Accordingly, upon review, while it indeed may have been the better practice for the probate court to have included more discussion of appellant in its "application of relevant law" analysis (Section XI of the judgment entry), we find no abuse of discretion in the court's fundamental "good cause" analysis in this matter.

*The "Disqualification" Consideration*

**{¶23}** Appellant next contends the trial court failed to properly interpret and apply the disjunctive term "disqualification" set forth in R.C. 2111.121(B), as applied to her.

**{¶24}** It is a well-established principle of statutory construction that a statute is to be read, to the extent practicable, to give effect to all its parts. *See Weckbacher v. Sprintcom, Inc.*, 5th Dist. Stark No. 2006 CA 00033, 2006-Ohio-4398, ¶ 9. *See, also*, R.C. 1.47(B). The principles of statutory construction also indicate that separate terms should reasonably be given distinct meaning. *See D.A.B.E., Inc. v. Toledo-Lucas County Bd. of Health,* 96 Ohio St.2d 250, 254, 2002-Ohio-4172 (stating "all words [in a statute] should have effect and no part should be disregarded").

**{¶25}** We note the statutory definitions set forth in R.C. 2111.01 do not provide legislative guidance as to the meaning of "disqualification" in the present context, although R.C. 2111.03 does require a prospective guardian to provide "[a] statement whether the applicant ever has been charged with or convicted of any crime involving theft, physical violence, or sexual, alcohol, or substance abuse, and, if the applicant has been so charged or convicted, the date and place of each charge and each conviction[.]"

**{¶26}** The verb "disqualify" has been defined in the general sense as "[t]o incapacitate, to disable, to divest or deprive of qualifications." *Tillis v. Wright*, 217 W.Va. 722, 731, 619 S.E.2d 235, 244 (2005), quoting *Bouvier's Law Dictionary* 888 (8th ed.1984). However, our research reveals only a handful of Ohio appellate decisions touching upon the post-2014 version of R.C. 2111.121(B), and none of them appear to provide a judicial definition of the term "disqualification."

**{¶27}** Appellant herein nonetheless proposes that the term should be viewed as objective or non-situational. She also directs us to *In re R.S.,* 9th Dist. Wayne No. 15AP0057, 2016-Ohio-1492, for the proposition when determining whether a guardianship applicant is disqualified, courts should look to "objective factors" such as criminal convictions or abuse allegations. In *R.S.*, which actually was an appeal from a grant of permanent custody by the Wayne County Juvenile Court under R.C. 2151.414, the Ninth District Court observed that the child's maternal uncle had a "disqualifying criminal record" regarding consideration as a possible relative placement. *Id.* at ¶ 34. Appellant also cites a pre-2014 case, *Hafner v. Hafner,* 9th Dist. Summit No. 16073, 1993 WL 498365, wherein the Ninth District Court affirmed a determination that an applicant was "unsuitable" to be his mother's guardian, under the prior version of R.C. 2111.121(B), in part because he had previously "pled guilty to a charge involving striking his mother about the head with a tennis shoe." *Id.* at 1.

**{¶28}** In the case *sub judice*, the probate court relied first on certain witnesses' negative testimony concerning some of the members of appellant's extended family. The court found that they "would not be appropriate persons to provide care and supervision * * *." Judgment Entry at 31. The court also found that appellant was disqualified because "her actions on the night of December 4th [the date of the parents' deaths], although made under extreme and stressful circumstances, demonstrate a lack of appropriate protective actions towards these wards[.]" *Id.* Appellant essentially contends these factors do not meet the statutory requirement of "disqualification."

**{¶29}** The case of *In re Guardianship of Hilt*, 6th Dist. Sandusky No. S-14-010, 2015-Ohio-3186, although utilizing a "suitability" standard, sheds some light on the

present issue. In that case, which followed a ruling on three competing guardianship applications, the Sixth District Court affirmed a probate court's determination that each applicant had "potentially disqualifying issues," including "various lapses in judgment as to their respective handling of certain situations and interactions with [the ward] and each other." *Id.* at ¶ 12. Furthermore, Ohio's statutory scheme conveys upon a probate court broad powers in all matters touching the guardianship. *See In the Guardianship of B.I.C.*, 9th Dist. Wayne No. 09CA0002, 2009-Ohio-4800, ¶ 16, citing *In re Hoke,* 10th Dist. Franklin No. 02AP-1398, 2003-Ohio-4704. Therefore, upon review, we reject appellant's restrictive reading of "disqualification" under R.C. 2111.121(B), and we find the probate court's consideration of this aspect of the statute did not constitute an abuse of discretion.

## *Conclusion*

**{¶30}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶31}** In her Second Assignment of Error, appellant argues the probate court abused its discretion by appointing appellee, the secondary nominee, as guardian for A.E.R. and C.S.R., alleging the evidence as to appellee was non-probative and that there was no adequate finding as to appellant of "good cause" to disregard the nomination preference in the children's parents' wills. We disagree.

**{¶32}** Probate courts have broad discretion in appointing guardians and those decisions regarding the appointment of guardians will not be reversed absent an abuse of discretion. *In re Guardianship of Borland*, 5th Dist. Stark No. 2002CA00410, 2003-Ohio-6870, ¶ 8 (additional citation omitted). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable

and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶33}** Appellant herein directs us to the final section of the probate court's judgment entry, which was captioned as "XI. Application of Relevant Law." We note this section runs from page 28 to page 33 in the judgment entry, even though the court had set forth an extensive recitation of evidence in the prior sections of the entry. As indicated previously, the court specifically found "good cause" in support of guardianship to Appellee Rebekah for eight reasons, which can be summarized in five categories: (1) Rebekah and her husband have two children and strong parenting techniques; (2) Rachel and Rebekah had similar parenting techniques; (3) Rachel had expressed an interest in moving back to the Waterford, Ohio, area; (4) Rachel's extended family in the Waterford area would provide support; and (5) Rachel had listed her mother and another sister as emergency school contacts. Entry at 29-30.[3]

**{¶34}** Appellant proposes that all but the last of the aforesaid grounds (the listing of her mother and another sister as contacts) would have been known to Rachel when she completed her will in 2014. Appellant further challenges the paucity of testimony and the lack of discussion in the entry regarding appellee's husband, Aaron B., despite the "ample testimony" about appellee, her parents, her brother and sister, and her sister's partner. Appellant's Brief at 21. Appellant also questions whether the existence of child-raising responsibilities as to appellee and her husband and the evidence as to similarity of parenting styles by Rachel and appellee should have been relied upon to override the

---

[3]   As appellee notes in response, the probate court also made reference to evidence of Rachel's change of heart regarding the guardianship nomination in her will. However, we do not find the probate court intended to invalidate Rachel's will.

preference set forth in Rachel's will. Appellant further maintains the court, in finding Rachel had expressed a desire to move back to her hometown of Waterford, Ohio, completely ignored Rachel's expressed concerns about the health effects of power plants in that area. Evidence was adduced that Rachel had also wanted AER and CSR to be at the smaller Waterford schools; however, appellee apparently intends to either home school or send the children to a private Christian school. Appellant also suggests that appellee might decide to remain in North Carolina, despite her plans to move to Waterford upon final confirmation that she has become guardian. Finally, appellant maintains the evidence of the emergency contact listing has nothing to do with "good cause" for rejecting appellant as guardian.

{¶35} In general terms, in a bench trial, a trial court judge is presumed to know the applicable law and to properly apply it. *See In re Adoption of J.L.M-L.*, 5th Dist. Muskingum No. CT2016-0030, 2017-Ohio-61, ¶ 15. In a guardianship proceeding, the rationale for giving deference to the findings of the probate court is that the court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *See In re Poliksa*, 1st Dist. Hamilton No. C-050474, 2006-Ohio-2617, ¶ 10. Upon review of the record in the case *sub judice*, we find the trial court properly rationalized its conclusions as to "good cause" and did not abuse its discretion in naming appellee as the guardian of A.E.R. and C.S.R. in this regard.

{¶36} Appellant's Second Assignment of Error is therefore overruled.

III.

**{¶37}** In her Third Assignment of Error, appellant contends the probate court abused its discretion by making a finding of her "disqualification,"  alleging this finding was based on considerations that are "subjective in nature," do not render her ineligible to serve as guardian, and were not supported by competent, credible evidence. We disagree.

**{¶38}** Appellant presently develops and extends her arguments pertaining to the "disqualification" factor as set forth in the First Assignment of Error. She essentially submits that the probate court's concerns about her extended family, particularly her parents (the paternal grandparents of A.E.R. and C.S.R.), were exaggerated and could have been remedied by court orders forbidding unsupervised relative visitation with the children.

**{¶39}** Appellant further takes issue with the probate court's finding of disqualification under R.C. 2111.121(B) based on the court's negative assessment of her reaction to the crisis brought about by Todd R.'s actions on December 4, 2016, which she alleges made her a "scapegoat for trusting in her own instincts in the way others trusted theirs." Appellant's Brief at 25. She notes there was evidence that Todd often turned to her in crisis situations and submits that calling for law enforcement sooner on the tragic day in question might have been counterproductive and put the children at a greater risk. To borrow an observation this Court has previously made in custody matters outside of the realm of probate proceedings, "we are confident in this case that both appellant and appellee care greatly about the [children's] welfare and both believe they can provide for [their] optimal care." *In re D.B.E.*, 5th Dist. Holmes No. 08 CA 8, 2009-Ohio-1396, ¶ 23.

However, upon review, we again find the probate court's broad reading of "disqualification" under the statute and its evidentiary conclusions in that regard did not constitute reversible error or an abuse of discretion in this instance.

**{¶40}** Appellant's Third Assignment of Error is therefore overruled.

IV.

**{¶41}** In her Fourth Assignment of Error, appellant contends the probate court improperly relied on inadmissible hearsay evidence during the guardianship proceedings.[4] We disagree.

**{¶42}** The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case *sub judice*, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman*, 5th Dist. Stark No. 1999CA00027, 2000 WL 222190. We also note that in a bench trial, a trial judge is "presumed to have considered only the competent and material evidence." *State v. Davis*, 10th Dist. Franklin No. 17AP-438, 2018-Ohio-58, ¶ 32, citing *State v. Sanders*, 92 Ohio St.3d 245, 267 (2001).

**{¶43}** Evid.R. 101(C)(7) states that the Ohio Rules of Evidence do not apply to "[s]pecial statutory proceedings of a non-adversary nature in which these rules would by their nature be clearly inapplicable."

---

4   Appellant's trial counsel entered a continuing hearsay objection at the emergency hearing, and it appears undisputed that the objection was therefore preserved for the present appeal.

{¶44} A probate court has plenary jurisdiction in the appointment and removal of guardians. *See In re: Guardianship of Herr*, 5th Dist. Richland No. 98-CA-16-2, 1998 WL 666986, citing *In Re: Guardianship of Daugherty*, 7th Dist. Columbiana No. 83-C-24, 83-C-29, 1984 WL 7676. Also, R.C. 2111.02(A) states that "if found necessary," a probate court has the authority to appoint a guardian on its own motion. When a guardianship is established, "[t]he guardian is simply an officer of the court under the court's control and subject to its directions and supervision." *Daugherty*, *supra.* The Ohio Supreme Court has clearly stated that guardianship proceedings are not adversarial, "but are in rem proceedings involving only the probate court and the ward \*\*\*." *See In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 5, citing *In re Guardianship of Love* (1969), 19 Ohio St.2d 111, 48 O.O.2d 107, 249 N.E.2d 794.

{¶45} Nonetheless, the Ohio Supreme Court also stated as follows in *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 495 N.E.2d 23: "We acknowledge that the Staff Note to Evid.R. 101(C)(7) indicates that a probate proceeding may become adversarial when a dispute over the admissibility of a will occurs and in that instance the Rules of Evidence should apply to the proceeding." *Id.* at 104, f.n. 1. However, the Supreme Court in *Haynes* found it unnecessary to elaborate on the subject, as it concluded the prior out-of-court statements at issue therein would have been admissible as an admission by a party opponent under Evid.R. 801(D)(2). *Id.*

{¶46} In the case *sub judice*, the probate court relied on *In re Guardianship & Conservatorship of Stancin*, 10th Dist. Franklin No. 02AP-637, 2003-Ohio-1106. In that case, the Tenth District Court of Appeals first noted the exception set forth in Evid.R. 101(C)(7), *supra*. *Id.* at ¶ 11. Furthermore, "[t]he purpose of guardianship hearings is to

gather information in order to determine the best interests of the prospective ward." *Id.* at ¶ 12, citing *In re Estate of Bednarczuk* (1992), 80 Ohio App.3d 548, 551, 609 N.E.2d 1310; *In re Guardianship of Corless* (1981), 2 Ohio App.3d 92, 95, 440 N.E.2d 1203. The Tenth District Court ultimately held: "If the hearsay rules were applicable to guardianship proceedings, the Probate Court would be barred from gathering and considering the very evidence of incompetency that statute and Superintendence Rules require it to gather and consider. Therefore, due to the non-adversarial nature of the guardianship proceedings and the inherent conflict between the purpose of the guardianship proceedings and the limitations imposed by the hearsay rules, we conclude that the hearsay rules are 'clearly inapplicable' to guardianship proceedings." *Stancin* at ¶ 13.

**{¶47}** Appellant seeks to limit the applicability of *Stancin* by pointing out that the competency of the ward was at issue in that case, unlike the matter *sub judice*. However, we note that in the case of *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, despite the underlying existence of a lengthy legal battle between the parents of an incompetent adult and a county board of developmental disabilities over a guardianship, the Ohio Supreme Court reiterated the rule of *Santrucek*, *supra*, stating that "[g]uardianship proceedings, including the removal of a guardian, are not adversarial but rather are in rem proceedings involving only the probate court and the ward." *Spangler* at ¶ 53.

**{¶48}** Accordingly, we find no error or abuse of discretion in the probate court's decision to allow hearsay evidence regarding certain family members and the deceased parents for purposes of determining the guardianship appointment for A.E.R. and C.S.R.

**{¶49}** Appellant's Fourth Assignment of Error is therefore overruled.

**{¶50}** For the reasons stated in the foregoing opinion, the judgment of the Court

of Common Pleas, Probate Division, Delaware County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 0323/d