[Cite as *In re Guardianship of Marks*, 2022-Ohio-2495.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE THE GUARDIANSHIP OF      :
ISHAMEL MARKS

                              :

                                    No. 110814

[Appeal by Ida Marks]         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 21, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2021GRD257730

---

### *Appearances:*

Edward M. Heindel, *for appellant*.

Resch, Root, Philipps & Graham, LLC, and Derek L. Graham, *for appellee*.

LISA B. FORBES, J.:

{¶ 1} Appellant Ida Marks ("Ida") appeals the trial court's order granting guardianship of her son Ishamel Marks ("Ishamel") to appellee Advocacy and Protective Services, Inc. ("APSI"). After reviewing the law and pertinent facts of the case, we affirm.

## I.  Facts and Procedural History

{¶ 2}  APSI filed an application for guardianship of Ishamel on February 9, 2021.  Subsequently, on March 11, 2021, Ida filed her own application for guardianship.

{¶ 3}  The probate court held a hearing before a magistrate on the competing guardianship applications on April 7, 2021.  Ida appeared pro se at the hearing.

{¶ 4}  On April 13, 2021, the magistrate issued a decision granting APSI's application for guardianship of Ishamel.  Ida filed objections to the magistrate's decision on June 4, 2021.

{¶ 5}  The probate court overruled Ida's objections and adopted the magistrate's decision granting APSI guardianship of Ishamel on August 20, 2021, finding that Ida's objections were not well taken because pertinent to this appeal: "the testimony of Shawn Vaughn was proper and should not be stricken from the record"; "the Magistrate applied the clear and convincing evidentiary standard when it found [Ishamel] incompetent"; and "the Magistrate did not err when he did not appoint counsel on behalf of [Ishamel] * * *."  It is from this order that Ida appeals.

{¶ 6}  At the April 7, 2021 hearing, the probate court heard testimony from three witnesses.  APSI called two witnesses in support of its application:  Shawn Vaughn ("Vaughn") and Eboni Freeman ("Freeman").  In support of her application, Ida called herself as a witness.  In addition, the probate court noted that the record contained a "court investigator report prepared by Dawn Schippling; two separate

statements of expert evaluation both indicating a need for guardianship; one filed on February 9th, one filed on March 25th. And also some additional supplemental medical documents that were provided on March 26th by the Monarch Center for Autism." Notably, both Ida and APSI argued that a guardian should be appointed.

## A. Hearing Testimony

### 1. Shawn Vaughn

{¶ 7} Vaughn is "a representative of APSI representing adults with developmental disabilities * * *." At the time of the hearing, Vaughn had not met Ishamel in person due to the Covid-19 pandemic. However, Vaughn had reviewed Ishamel's background records and discussed the case with the Cuyahoga County Board of Developmental Disabilities. In his opinion, there was no less restrictive alternative to guardianship for Ishamel.

{¶ 8} According to Vaughn, appointing APSI to be Ishamel's guardian would be in Ishamel's best interest because "he was under Children and Family Services, but now they are no longer the guardian because he aged out because he turned 21. So currently he has no guardian, and I don't think that he would be able to be guardian of his self."

{¶ 9} Vaughn stated that he had 48 individuals with developmental disabilities as part of his "case load." When Vaughn has to make medical or placement decisions for one of the individuals with whom he works, he has "support with those decisions from the medical specialists, and we also have support from our regional program directors and assistant regional program directors as well as the

medical specialist."   Further, according to Vaughn he has "the full support and backing of APSI in [his] day-to-day services."

{¶ 10} In his experience with APSI, Vaughn claimed that it was oftentimes easier on the family of the ward for APSI to be the guardian and to make the decisions for the incompetent family member.

> Well, a lot of times we definitely want to keep the family members in the loop because some of our, some of our clients don't actually have family, which is a lot tougher, but if people have family, we want to make sure we encourage the relationship between the family and always keep them involved in what is going on, whether it's medical or any kind of needs, we also, we always make sure the family is involved.

### 2. Eboni Freeman

{¶ 11} Freeman is a social program administrator II for the Cuyahoga County Division of Children and Family Services ("CCDCFS").   Freeman testified that CCDCFS became involved with Ishamel because "there were concerns with school, but I think the underlying issue was an incident in which * * * Ishamel ran out into the street and was almost hit by a car."   While CCDCFS had custody of Ishamel, the agency worked with Ida to assist her in getting a "better understanding of Ishamel's diagnosis and his needs and techniques."   However, according to Freeman, there has "just always been push back."

{¶ 12} Freeman met with Ishamel in 2018 to discuss CCDCFS's "transition process."  The transition process is for "youth who are open with Board of DD" who are "aging out of our system we transition, we kind of give a warm hand off between from your agency to the Board of DD, and we coordinate between the two agencies

to find housing and make sure, you know, apply for Social Security for him, to make sure that he's set up when he ages out of our system."

{¶ 13} Freeman stated that through her position with CCDCFS, she has interacted with "a lot of young individuals" who need a legal guardian after they become an adult. In her opinion, Ishamel needs a guardian and would benefit from a professional guardian rather than a family member guardian. Freeman based her opinion on her interactions with Ishamel and her interactions with Ishamel's family. "The concern is Ishamel has very high needs. And from the start of the transition process, the family was, have not been in agreement with Ishamel having his own home and being in the setting. They prefer for him to be home." Freeman elaborated that CCDCFS was concerned that if a family member was awarded guardianship, "they will remove him from his current placement and move him home with them in which they cannot provide for his needs." "Ishamel, since coming into care, his level of aggression have decreased some, but there are some incidents I think as recent of August 20/22 where he required six staff to restrain him."

{¶ 14} According to Freeman, if Ishamel was moved out of his current placement and into his family home, and subsequently needed to be placed outside of the family home again, "it's not guaranteed that an appropriate placement would be identified in a timely fashion." That is because the "County Board looks at our children * * * as emergency cases in identifying housing and appropriate placement

for them." Further, not having a professional guardian would limit the services and options available to him and would cause him direct harm.

{¶ 15} Freeman believed that Ishamel would be removed from his current placement if Ida was awarded guardianship "[b]ecause she has stated that on several occasions she wants him home with her."

{¶ 16} In his current placement, Ishamel lives with at most four individuals, is involved in a day program, and receives socialization and interaction with others there. Freeman stated that the socialization was very important for Ishamel and that he would not receive that level of socialization if he were not in his current placement or one similar.

### 3. Ida Marks

{¶ 17} Ida believed that she should be awarded guardianship of Ishamel because she had, "a home for him to live. I have a place for him that he could stay. * * * I'm ready for him to come home because * * * it's been going on at least three years." Ida explained that she felt as though "things have changed, and I think that I'm a better parent than I was back then when * * * County took custody."

{¶ 18} According to Ida, CCDCFS was awarded custody of Ishamel because "he wasn't going to school. * * * I felt that was wrong because they saying that it was abuse and neglect in the home where I, where he was living at my home, but it wasn't, and that I just feel that he should come home." In the time that Ishamel has been out of her home Ida claimed that she developed a "better understanding * * * of his diagnosis[.]"

{¶ 19} Ida claimed that Ishamel was not "getting the best care" at his current placement. "[T]hey're not really taking care of him like they supposed to, and I feel like I'm a better person, I'm his mother[.]" Ida stated that she had visited Ishamel at his current placement. Because of COVID-19, the placement "recommend[ed] that [she] see him once a week." However, prior to Covid-19, Ida visited Ishamel at least "twice a week."

{¶ 20} The court asked Ida how she would deal with some of the aggressive behavior that Ishamel exhibits. Ida responded, "I've been going to parenting classes, and they explained, show me the techniques how to deal with Ishamel when he gets aggressive." However, Ida claimed that she had not experienced any aggression from Ishamel during her visits with him.

{¶ 21} Ida explained that if she were awarded guardianship, she "would make some kind of arrangements" prior to removing him from his current placement and moving him into her home to ensure he has the proper services.

{¶ 22} In response to Freeman's testimony that Ishamel was removed from the home after an incident where he ran into the street, Ida claimed that Ishamel "was staying with his father when that happened," and she never had that sort of incident occur with Ishamel at her house.

## B. Court Investigator Report

{¶ 23} The court investigator report stated that Ishamel was served notice of the guardianship proceeding via Zoom at his group home on March 2, 2021. According to the report, the investigator was "unable to determine" whether Ishamel

understood the concept of guardianship because "Ishamel's 'receptive language centers upon familiar words and commands, and he has difficulty adapting to novel concepts.'"

{¶ 24} The report states that Ishamel's diagnoses are "Autism Spectrum disorder and Moderate intellectual disabilities." It noted that Ishamel "has lived in a group setting for the last 4.5 years," and that his "[i]nteractions have improved with the staff."

{¶ 25} The investigator recommended in the report that a guardianship of the person was needed for Ishamel. The investigator explained:

> Ishamel Marks is 20 years old and he is Autistic and has moderate developmental disabilities. * * * Ishamel is involved with the [Cuyahoga County Board of Developmental Disabilities] * * *. He was living at the Monarch Boarding academy since 2016; and as of 1/5/2021 he has transitioned into a group home; managed by Connections.
>
> Prior to his placement at Monarch; he was residing with his mother Ida Marks in the family home * * *. Ishamel has difficulty communicating his needs and preferences and he relies on his staff to help identify his needs on a basic level. Something his family was not able to do.
>
> Ishamel has done well at Monarch and with continued support, and modeling by staff; they hope that he will do well in a group home. There has been significant decrease in his physical aggression; even though it is still in his treatment plan that staff can physically restrain him if necessary. His treatment team will continue to maintain his health, safety and make informed decisions regarding his ongoing medical and psychiatric care.

{¶ 26} The report concluded by stating that Ishamel was served notice of the guardianship application and that the investigator "communicated to [Ishamel] in a language and method best understandable" by him. Further, Ishamel was notified

of his "right to be present at the hearing, the right to contest any application for the appointment of a guardian * * *, and the right to be represented by counsel."

## C. Expert Evaluations

### 1. February 9, 2021 Expert Evaluation

{¶ 27} Theresa Prabucki ("Prabucki"), a licensed independent social worker, who "has been a member of [Ishamel's] Cuyahoga DD support team since 31 October 2019, to assist with residential transition planning" prepared an expert evaluation for the guardianship proceedings.

{¶ 28} The evaluation explains Ishamel's impairments and states:

Ishamel is a 20-year-old young man diagnosed with Autism Spectrum Disorder[1] and Intellectual Disability, Moderate. He currently resides at Monarch Boarding Academy, where he was admitted in November 2016 due to a significant increase in physical aggression. Prior to his residence at Monarch, Ishamel resided with his mother in the family home, spending weekends with his father. Per Ishamel's most recent Functional Behavior Assessment (7/19/2020), "It was reported that Chester [Ishamel's father] would often change Ishamel's medications, or stop giving it to him completely, with little or no warning. At the time of admission, Ishamel was noted to have low frustration tolerance, limited verbal communication skills, low safety awareness, no functional coping skills, limited hygienic skills, and limited leisure skills." Since Ishamel has been in a more structured and supported residential therapeutic setting, with a consistent medication regimen and ample opportunities for skill development, his physical aggression has reduced significantly in frequency and intensity.

* * * He requires both macro and micro visual schedules and staff prompting to follow a daily schedule. Ishamel's Bellefaire JCB Individualized Treatment plan (10/22/2019-10/21/2020) indicated

---

[1] The report states that Ishamel was diagnosed with severe Autism Spectrum Disorder on August 22, 2005.

that he has demonstrated deficits in both receptive and expressive communication. Receptively, Ishamel's receptive language "centers upon familiar words and commands, and he has difficulty adapting to novel concepts." Expressively, Ishamel has difficulty communicating his needs and preferences, and he relies on supportive others to help identify his needs on a basic level. He has difficulty spontaneously expressing himself with verbal language, * * *. Ishamel has made significant progress with identifying his emotions and choosing coping skills to self-soothe. However, he continues to demonstrate occasional challenges, particularly when he becomes anxious, agitated, frustrated, or over-stimulated. During such times, he may present with significant physical aggression or property destruction requiring the use of physical restraints by multiple staff. * * *.

Ishamel's team is in the process of planning for his graduation from the Monarch Boarding Academy and his transition to a congregate residential setting in the community. He will require comprehensive supports to maintain his health and safety, including ongoing medical and psychiatric care, and an individualized support plan that includes restrictive measures, specifically physical restraints. Due to his diagnosis of moderate intellectual disability and autism spectrum disorder, he is unable to make informed decisions independently, and it is recommended that guardianship be established.

{¶ 29} The evaluation acknowledged that Ida has expressed interest in serving as Ishamel's guardian, but "both Ishamel's DCFS representative and his Bellefaire treatment team have expressed concerns about [Ida's] ability to make decisions that will promote Ishamel's safety and well-being."

Ishamel currently resides in a therapeutic residential setting where one of his identified treatment goals is to "demonstrate an increase in independence in completing activities of daily living." Using visual supports and modeling, staff assist him with learning how to clean his bedroom and when to discard damaged personal items. In order to complete some of his routine tasks i.e. brushing teeth, washing laundry, Ishamel uses micro schedules that help break down the specific steps to be done. As a result of his moderate intellectual disability, Ishamel is unable to independently make decisions concerning medical treatments, living arrangements, and diet. He relies on supportive caregivers to assist him in all of these areas.

{¶ 30} The evaluation concluded with Prabucki's opinion that guardianship should be established for Ishamel.

### 2. March 25, 2021 Expert Evaluation

{¶ 31} Dr. Sonal Moratschek MD, MPH ("Dr. Moratschek") prepared an expert evaluation for Ishamel's guardianship proceedings. Ishamel was Dr. Moratschek's "patient at Bellefaire until [Ishamel's] discharge." He evaluated him from 2015-2021. According to Dr. Moratschek, Ishamel has generalized anxiety disorder and autism spectrum disorder.

{¶ 32} The evaluation stated that Ishamel "has limited ability to care for [him]self * * *." Ishamel was described as "anxious" during the evaluation. According to Dr. Moratschek, Ishamel's "[t]hought process was focused on moving away from [the] interview" and Ishamel "[c]ontinued to state 'Say no.'"

{¶ 33} The evaluation concluded with Dr. Moratschek's opinion that guardianship should be established for Ishamel.

### D. Medical Records

{¶ 34} Also part of the record was a "discharge recommendation" from Monarch Boarding Academy. According to the discharge recommendation, "Ishamel is currently programmed with 3:1 client-to-staff ratio but requires 1:1 support during portions of his routines to ensure thoroughness of routine and to assist with continued skill building." Ishamel's "maladaptive behaviors include physical aggression observed as scratching, hitting, pulling, and choking." However, the document states that "[t]hese behaviors have decreased significantly since

admission and have become easier to manage." While "[p]resently Ishamel does not require frequent physical restraints * * * in moments in which he is experiencing heightened emotions, he does require 2 staff to assist in utilizing his coping skills. Ishamel will engage in physical grabbing or pulling at staff's arms as a precursor to more intense aggression." The document noted that "[o]nce Ishamel begins to hit and scratch, it is often difficult to de-escalate him and this can lead to a physical intervention; the use of 3 to 4 staff during a physical intervention is needed to maintain safety to all parties involved." Further, Ishamel has been aggressive toward Ida during visits but that she has been trained on "utilizing his visuals to de-escalate" Ishamel's behavior.

{¶ 35} Monarch Boarding Academy recommended that upon discharge, "Ishamel should be placed in an environment where he can continue to receive the level of individualized assistance he requires to be successful during challenging moments in his day." "Ishamel will require supervision in his general area during all waking hours to maintain emotional regulation as well as to assist him in the overall organization of his day."

## II. Law and Analysis

{¶ 36} On appeal, Ida raises one assignment of error arguing that "the trial court abused its discretion in awarding guardianship to [APSI] instead of the ward's natural mother." We disagree.

{¶ 37} A probate court's appointment of a guardian is reviewed for an abuse of discretion. *In re Estate of Collins*, 8th Dist. Cuyahoga No. 87978, 2007-Ohio-631,

¶ 10. "The paramount concern is the welfare of the ward and absent an abuse of discretion the probate court's decision will not be disturbed." *In re Tutt*, 8th Dist. Cuyahoga No. 77028, 2000 Ohio App. LEXIS 3961, 10 (Aug. 31, 2000). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 33-40 (discussing the abuse of discretion standard of review).

{¶ 38} "If the probate court finds it to be in the best interest of an incompetent * * * it may appoint pursuant to divisions (A) and (C) of this section, * * * on application by an interested party, a limited guardian with specific limited powers." R.C. 2111.02(B)(1). The probate court is required to hold a hearing prior to awarding guardianship. R.C. 2111.02(C). In pertinent part, the statute requires that the "hearing shall be conducted in accordance with" the following:

> (3) If the hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the burden of proving incompetency shall be by clear and convincing evidence.[2]

R.C. 2111.02(C).

---

[2] R.C. 2111.01(D)(1) defines incompetent as "[a]ny person who is so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability, * * * that the person is incapable of taking proper care of the person's self or property * * *."

{¶ 39} Based upon the evidence in the record,[3] we find that the probate court did not abuse its discretion in appointing APSI as guardian of the person of Ishamel.

{¶ 40} The probate court heard testimony and was provide with expert evaluations and medical records that stated that Ishamel was diagnosed with Autism Spectrum Disorder and intellectual disabilities and "[a]s a result of his moderate intellectual disability, Ishamel is unable to independently make decisions concerning medical treatments, living arrangements, and diet." Therefore, because Ishamel's disabilities make him incapable of caring for himself, the record demonstrated by clear and convincing evidence that Ishamel was incompetent.

{¶ 41} Ida argues in her appellate brief that the "magistrate did not apply the clear and convincing evidence standard." However, we find that the record demonstrates that the magistrate did apply the clear and convincing evidence standard. In his decision, the magistrate explicitly found "[b]y clear and convincing evidence, the Ward is incompetent, is in need of a Guardian or Successor Guardian, and would benefit from the appointment of such fiduciary." Therefore, Ida's argument has no merit.

{¶ 42} Further, the probate court did not abuse its discretion when it found that granting APSI's application for guardianship, rather than Ida's, was in Ishamel's best interest. Ishamel was placed in the custody of CCDCFS after he ran into the street and was almost hit by a car. The probate court heard testimony that

---

[3] As discussed more fully later in this opinion, Evid.R. 101(C)(7) provides that the rules of evidence do not apply to "[s]pecial statutory proceedings of a non-adversary nature in which these rules would by nature be clearly inapplicable."

because of his diagnoses, Ishamel has "very high needs" and has demonstrated aggressive tendencies. This testimony is supported by the expert evaluations and medical records provided to the court. While Ishamel's "level of aggression" had decreased since being in professional care, he still had incidents where he was aggressive. When the court asked Ida how she would handle Ishamel's aggression, she stated that she attended parenting classes that taught her techniques on how to deal with his aggression, however, the court heard that prior to the hearing, Ishamel had an "incident" that "required six staff to retrain him."

{¶ 43} In his current placement, Ishamel receives socialization and interaction with others. Freeman explained to the court that Ishamel would be harmed by not having a professional guardian because it would limit the services available to him. Despite his needs and the progress that he made in his current placement, the court heard that if Ida were awarded guardianship, she intended to move Ishamel back into her home.

{¶ 44} Accordingly, we find that the probate court did not abuse its discretion in awarding guardianship to APSI.

{¶ 45} Under her sole assignment of error, Ida makes auxiliary arguments. While these arguments do not necessarily impact whether the probate court abused its discretion in awarding guardianship to APSI, in the interest of fairness and justice, we will briefly discuss them.

{¶ 46} First, Ida argues that Vaughn did not have personal knowledge to testify regarding "Ishamel's circumstances" because he had never met Ishamel in person, in violation of Evid.R. 602 and 701.

{¶ 47} Evid.R. 602, provides, in part, that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

{¶ 48} Pursuant to Evid.R. 701, a lay witness may testify as to his or her opinions or inferences, "which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 49} We note that the rules of evidence do not apply to "[s]pecial statutory proceedings of a non-adversary nature in which these rules would by nature be clearly inapplicable." Evid.R. 101(C)(7). The Ohio Supreme Court has held that "[g]uardianship proceedings * * * are not adversarial * * *." *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 53. Further, various districts have found that some if not all of the rules of evidence do not apply to guardianship proceedings. *See In re Guardianship of Cohodes*, 10th Dist. Franklin Nos. 14AP-318, 14AP-972, 14AP-319, and 14AP-973, 2015-Ohio-2532, ¶ 22 (finding that the rules of evidence do not apply to guardianship proceedings); *In re A.E.R.*, 2018-Ohio-1685, 111 N.E.3d 674, ¶ 46 (5th Dist.), quoting *In re Guardianship & Conservatorship of Stancin*, 10th Dist. Franklin No. 02AP-637,

2003-Ohio-1106, ¶ 13 (finding that the rules against hearsay are "clearly inapplicable" to guardianship proceedings).

{¶ 50} Regardless of the applicability of the rules of evidence to guardianship proceedings, Vaughn's testimony would meet the requirements of Evid.R. 601 and 702 to establish that he had personal knowledge to testify as a representative of APSI. Additionally, there was an abundance of other evidence provided that supports the trial court's award of guardianship to APSI.

{¶ 51} While Vaughn stated that he had not personally met Ishamel, he had reviewed Ishamel's records and discussed the case with the Cuyahoga County Board of Developmental Disabilities. Further, he testified regarding what he believed would be in Ishamel's best interest as an adult with developmental disabilities, based on Vaughn's experience as a representative for APSI as a guardian to 48 other adults with developmental disabilities. Therefore, the probate court did not err when it allowed Vaughn to testify and considered his testimony to be proper.

{¶ 52} Freeman testified that she had met Ishamel and based upon her experience with other individuals with developmental disabilities who were aging out of CCDCFS's custody and Ishamel's "very high needs[,]" she believed he needed a professional guardian. Further, the court investigator report, expert reports, and medical records demonstrate that Ishamel was diagnosed with autism, Ishamel has difficulty communicating his needs and caring for himself, and his family was unable to help him identify his needs when he lived with them. Further, Ida herself testified

that she would remove Ishamel from his current placement if the court awarded guardianship to her.

{¶ 53} Finally, Ida argues that "[t]he Magistrate did not protect Ishamel's statutory rights to counsel[.]" This lead opinion finds that Ida does not have standing to raise this issue.

{¶ 54} Pursuant R.C. 2111.02(C)(7),

[i]f the hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the alleged incompetent has all of the following rights:

(a) The right to be represented by independent counsel of the alleged incompetent's choice;

(b) The right to have a friend or family member of the alleged incompetent's choice present;

(c) The right to have evidence of an independent expert evaluation introduced;

(d) If the alleged incompetent is indigent, upon the alleged incompetent's request:

(i) The right to have counsel and an independent expert evaluator appointed at court expense;

(ii) If the guardianship, limited guardianship, or standby guardianship decision is appealed, the right to have counsel appointed and necessary transcripts for appeal prepared at court expense.

{¶ 55} Pursuant to the statute, these rights belong to the alleged incompetent for whom a guardianship application is filed. Here, the court heard testimony from Vaughn and Freeman that Ishamel had been under CCDCFS's custody prior to turning 21, leaving him without a guardian. Because Ishamel was

without a guardian, APSI and Ida filed their respective applications for guardianship that were before the probate court.

**{¶ 56}** Accordingly, in this matter the rights afforded under R.C. 2111.02(C)(7) rest with Ishamel. Because these are Ishamel's rights, Ida has no standing to assert them on his behalf as an applicant for guardianship. *See Holmes v. Holmes (In re Holmes)*, 5th Dist. Coshocton No. 14-COA-025, 2015-Ohio-542, ¶ 16.

**{¶ 57}** Based on the foregoing, we find that the probate court did not err in awarding guardianship to APSI. Ida's assignment of error is overruled.

**{¶ 58}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LISA B. FORBES, JUDGE

SEAN C. GALLAGHER, A.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION);
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 59} I respectfully concur in judgment only.

{¶ 60} Ida Marks ("Ida") has standing to appeal the appointment of Advocacy Protective Services Inc. ("APSI"), as guardian of the person and estate of Ishamel Marks ("Marks") and to challenge the deprivation of Marks's statutory rights. *In re Guardianship of Santrucek*, 120 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, ¶ 14. I would not adopt the conclusion reached in *Holmes v. Holmes (In re Holmes)*, 5th Dist. Coshocton No. 14-COA-025, 2015-Ohio-542, at ¶ 16, that an applicant for guardianship or an intervenor does not ever have standing to appeal or challenge the deprivation of the alleged incompetent person's rights enumerated in R.C. 2111.02(C)(7) because those rights belong only to the alleged incompetent person.

{¶ 61} Although the rights belong to the alleged incompetent person, that is not to say than an interested person cannot ask the probate court to ensure enforcement of those rights.

{¶ 62} If the person is declared incompetent under R.C. 2111.02, nothing has changed except for that legal designation of that person. The mental or physical health limitations that led to the incompetency finding and the fact that the person is incapable of acting of their own accord previously existed. The court's declaration of incompetency simply recognizes that fact and declares it for legal purposes. Although one is presumed to be competent until legally declared otherwise, I cannot agree that all such persons have the inherent capability of asserting their statutory

rights without assistance from others, or even effectively waiving those rights, immediately before being declared incompetent and incapable of managing their own affairs. *See Santrucek* at ¶ 21 (Pfiefer, J., dissenting). Any waiver of the statutory rights in that instance should be suspect. *See, e.g., State v. Cassano*, 5th Dist. Richland No. 07CA27, 2008-Ohio-1045, ¶ 15 (case remanded for hearing to determine whether offender was competent to waive a statutory right); *but see In re Furgione*, 8th Dist. Cuyahoga No. 67715, 1995 Ohio App. LEXIS 4857, 4 (Nov. 2, 1995) (an alleged incompetent person, who suffered from senile dementia, was incapable of caring for himself and demonstrated "inadequate judgment ability," nonetheless validly waived his right to counsel before being declared incompetent in a R.C. 2111.02 proceeding).

{¶ 63} The lead opinion's adoption of *Holmes* prevents concerned family members from ensuring that the person's interests are protected after properly entering an appearance in the action. For instance, imagine a situation in which a distant relative enters an appearance to challenge the guardianship proceedings in an honest attempt to ensure the best for their relative. *See, e.g., In re J.W.*, 5th Dist. Fairfield Nos. 11-CA-2, 11-CA-3, 11-CA-4, and 11-CA-5, 2011-Ohio-5191, ¶ 38; *In re Guardianship of Cicchella*, 11th Dist. Lake No. 2013-L-132, 2014-Ohio-5703, ¶ 13. Under *Holmes*, the fact that the alleged incompetent person failed to assert their statutory rights leads to waiver. For the waiver to be binding as only asserted through the alleged incompetent person, however, courts would have to accept the fiction that moments after accepting a valid and knowing waiver of the R.C.

2111.02(C)(7) rights, the court is capable of declaring that same person incompetent and incapable of asserting their own rights.

{¶ 64} I would not deny concerned, interested persons from timely and properly asserting the alleged incompetent person's statutory rights in all situations. Standing in a guardianship proceeding is solely derived from the interested person's status as a party in the case. *Stantrucek*, 20 Ohio St.3d 67, 2008-Ohio-4915, 896 N.E.2d 683, at ¶ 14. The question in these cases is whether the alleged incompetent person has the capacity to waive their rights.

{¶ 65} Given the implications of the lead opinion's conclusion, I would avoid rendering a decision on the standing issue. Marks's statutory rights under R.C. 2111.02(C)(7) are not a dispositive issue. Ida filed her own application to be appointed the guardian, and she was present at the hearing in which she could have timely raised Marks's statutory rights on his behalf but did not do so. That was not her focus. Her focus was on her application to be appointed Marks's guardian whereby she waived any error in the statutory process. "[A]dvisement of a ward of her statutory rights and a subsequent lack of assertion of the rights, constitutes a waiver." *In re Guardianship of Naticchia*, 11th Dist. Lake No. 2020-L-034, 2020-Ohio-6814, ¶ 20, citing *In re Cicchella* at ¶ 14-15. Even if she possessed standing to do so, Ida has not timely asserted any deprivation of rights under R.C. 2111.02(C), and has not demonstrated plain error through her objections to the magistrate's decision based on the trial court's conclusion that all statutory requirements and rights were maintained.

{¶ 66} Since both parties generally agree that Marks is incompetent and in need of a guardian, and no error has been assigned with respect to the probate court's conclusion on the competency issue, our scope of review is narrow. Ida is asking this court to declare her the guardian over APSI because of her maternal relationship.

{¶ 67} According to the prevailing law in Ohio, "there is no statutory preference for who should be appointed the guardian of a person declared incompetent." *In re Estate of Collins*, 8th Dist. Cuyahoga No. 87978, 2007-Ohio-631, at ¶ 14. Although in practice, it is generally understood that courts look to "the next of kin or those with familial ties or someone acceptable to such persons on the theory that they will be the ones most concerned with the ward's welfare, [courts] have great discretion in this matter and are not required to do so." *Id.* Courts may appoint an independent person as guardian if it is in the best interest of the ward, and there is no statutory requirement to favor appointing a family member over an independent guardian. *Id.*, citing *In re Guardianship of Terzano*, 11th Dist. Lake No. 90-L-14-050, 1990 Ohio App. LEXIS 5398 (Dec. 7, 1990). Thus, the probate court has discretion as to whom to consider as the guardian upon concluding that the ward is incompetent; and that discretion does not depend on the clear and convincing standard, which applies only to the determination of the person's incompetency. R.C. 2111.02(C)(3).

{¶ 68} Ida does not directly address the probate court's discretion with respect to granting APSI's application for guardianship of Marks and denying hers

but instead focuses on the admissibility of testimony from APSI's representative under the Ohio Rules of Evidence. As the lead opinion notes, those rules do not generally apply to guardianship proceedings. *In re Guardianship of Cohodes*, 10th Dist. Franklin Nos. 14AP-318, 14AP-972, 14AP-319, and 14AP-973, 2015-Ohio-2532, at ¶ 22.

{¶ 69} The sole issue for this appeal is whether the probate court abused its discretion by appointing APSI as the guardian of Marks instead of Ida. Since Ida has not demonstrated error on that point, the decision of the probate court should be affirmed.

{¶ 70} For the foregoing reasons, I concur in judgment only.


MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 71} The issue presented in this appeal concerns whether the probate court abused its discretion in awarding guardianship to APSI instead of to the ward's mother. I concur fully with the lead opinion that the trial court did not abuse its discretion in granting APSI guardianship of Ishamel. I concur in judgment only because the R.C. 2111.02(C)(7) issue regarding an alleged incompetent's rights is not squarely before us and a holding on that issue is not necessary under the facts of this case.